[No. A042160. First Dist., Div. One. Jan. 24, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL A. REMINGTON, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for partial publication. The portions to be published follow.

COUNSEL

Kyle Gee, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Ronald S. Matthias and Jeffrey M. Bryant, Deputy Attorneys Genral, for Plaintiff and Respondent.

OPINION

HOLMDAHL, J.—

### SUMMARY OF CASE

Defendant stole a shotgun and other weapons, then used the shotgun to take a van at gunpoint, to murder a deputy sheriff, and to shoot at other people. He contends on appeal that his murder conviction must be reversed because of errors in jury instructions and that four of his convictions for aggravated assault, plus his conviction for theft of firearms, must be reversed because those crimes did not occur in the county in which he was tried.

The judgment is affirmed.

### *Facts*

There is no factual dispute about the events which led to defendant's arrest and prosecution. Defendant, then 17 years old, and John Kirk spent the night of August 22-23, 1985, at the home of Kirk's mother and stepfather at 361 San Marcos Drive in Vallejo, Solano County. The mother and stepfather left the home for a weekend camping trip at about 6 p.m. on Friday, August 23. Within a few minutes of their departure, defendant stole a small armory from the house: A 12-gauge shotgun, two rifles, a bandoleer, three swords, two machetes, a bow, a box of arrows, and a box containing ammunition for the firearms, including slug ammunition (as distinguished from shells loaded with pellets) for the shotgun.

Defendant and Kirk spent the next two nights at defendant's apartment in San Pablo, Contra Costa County. On Sunday, August 25, defendant and Kirk went to a Safeway parking lot in San Pablo. Defendant took the shotgun with him, loaded with slug ammunition. In the parking lot, defendant took the keys to Douglas Powell's 1985 Chevrolet van from Powell at gunpoint. Kirk drove the van back to defendant's home, where defendant and Kirk loaded the van with the loot from the theft of the preceeding Friday.

Kirk then drove the van to the Vacaville area in Solano County. At about 4 p.m., while the van was parked on Cherry Glen Road, defendant tossed some of Powell's cassette tapes and some papers, including Powell's vehicle registration papers, out into a field. Carl Parrish, a resident of the neighborhood, saw the littering incident. When the van left the immediate neighborhood, Parrish went out to see what had been thrown out of the van and, then, at about 4:55 p.m., reported the incident to the Solano County Sheriff's Department.

Deputy Sheriff Jose Cisneros looked for the van and, at about 5:25 p.m., found it near the intersection of Cherry Glen and Pleasant Valley Roads. Kirk had backed the van approximately 60 yards off the road into an adjacent field. Cisneros drove his patrol car into the field, stopping it about 10 yards away from the van, with the 2 vehicles facing each other.

Cisneros got out of his car and walked toward the van. Defendant got out of the van, pointed the shotgun at Cisneros, and demanded that Cisneros remove his gun belt. Cisneros got his gun belt unbuckled, but did not get the keepers (little leather straps) which attached the gun belt to his regular pants belt unsnapped. Defendant fired one shot into the ground, then, 15 to 30 seconds later, shot Cisneros in the face with the shotgun from a range of about 8 feet. Cisneros's eyeglasses flew off his face and landed 31 feet away. The 12-gauge slug totally destroyed the right side of the deputy's brain and killed him instantly. Defendant yelled, "Let's get out of here" to Kirk and jumped back into the van. Kirk quickly drove away from the scene, heading north on Pleasant Valley Road.

California Highway Patrol Officer John Adams was parked in his patrol car not far from the murder scene. A passing motorcyclist told him of the shooting. Adams went to the scene where Cisneros's body lay, found another deputy sheriff already there, and set out in pursuit of the van at the behest of that deputy. Adams caught up with the van about five or six miles north of the carnage, and began following it.

Kenneth Elliott, a park ranger working at Lake Solano Park, at the very northern end of Solano County, was in a Ford Fairmont station wagon

equipped with overhead emergency lights, a siren, a police radio, and a four cylinder engine. Elliott heard of the murder and pursuit on his radio, and started driving south on Pleasant Valley Road to lend assistance. He saw the van, just as Adams was catching up with it, pass him going north, made a U-turn, and hurried to join the pursuit.

Adams lost sight of the van as it went into an S-curve. As Adams entered the curve, he saw that the van had stopped slightly off the road. Defendant had gotten out and was standing at the back of the van holding the shotgun. Adams stopped his car 75 to 100 feet away from the van. Defendant fired a shot which hit a tie rod and blew out the left front tire of Adams's car, then fired again after Adams ducked behind his dashboard for cover and started backing up around the curve. Defendant got back into the van, which resumed its flight. With Adams's car disabled, Elliott became the only officer in pursuit.

The chase passed through the Lake Solano Park area from which Elliott had set out originally, then entered Yolo County at the point where Pleasant Valley Road crosses Putah Creek. Two other officers who had heard of the chase on their radios were preparing to join in. Winters Police Officer Patrick Lawson was in a patrol car southbound on Pleasant Valley Road. Napa County Deputy Sheriff Marvin Atkins was on a motorcycle eastbound on State Highway 128, approaching the intersection of that highway with Pleasant Valley Road, just north of Putah Creek. At the intersection, the van turned east on Route 128, toward Winters, and Atkins took up pursuit, maneuvering his motorcycle in front of Elliott's slower station wagon. Lawson had to get his car turned around, but after he had done so, he overtook the other two officers and his car became the lead vehicle pursuing the van, with Elliott's station wagon bringing up the rear, all of them with emergency lights flashing and sirens wailing.

Defendant fired four shotgun blasts out of the back of the van in the direction of the three pursuing officers. The first one blew out the left rear window of the van. Lawson heard one of the shots buzz by just outside his open patrol car window. As the van passed through Winters, defendant fired two more shots, one of which blew out a tire on Bayard Brown's car, as Brown was trying to get his car out of the way.

Finally, at about 5:50 p.m., on the other side of Winters, the van pulled into an orchard, and the two occupants got out and were arrested.

. . . . . . . . . . . . . . . . . . . . . . .*

## *Procedural History*

Defendant was tried on an informally constructed amended information charging him in 10 counts as follows: count I, grand theft of firearms (Pen. Code, § 487, subd. 3);[1] count II, robbery (§ 211); count III, unlawful vehicle taking (Veh. Code, § 10851); count IV, the murder of Cisneros (§ 187); count V, assaulting Lawson, an on-duty peace officer, with a deadly weapon (§ 245, subd. (c)); count VI, ditto as to Atkins; count VII, ditto as to Elliott; count VIII, assaulting Brown with a firearm (§ 245, subd. (a)(2); count 9, the attempted murder of Adams (§§ 187, 664); count X, assaulting Adams, an on-duty peace officer, with a deadly weapon. Personal firearm use allegations were appended to counts II, III, IV, and IX (§ 1203, subd. (e)(2), prohibiting probation except in unusual cases; § 1203.06, subd. (a)(1)(i), completely prohibiting probation for the murder; § 1203.06, subd. (a)(1)(iii), completely prohibiting probation for the robbery; § 12022.5, providing for a two-year sentence enhancement).

A jury found defendant not guilty of the attempted murder of Adams and guilty of second degree murder in the killing of Cisneros. Otherwise, the jury found defendant guilty as charged, and found the firearm use allegations to be true with respect to all but count IX, the attempted murder count. Defendant was sentenced to serve 31⅔ years to life in state prison.

. . . . . . . . . . . . . . . . . . . . . . .*

## *Venue*

▌ Defendant contends that the Solano County Superior Court in which he was tried had territorial jurisdiction only over those offenses which he committed in Solano County; i.e., stealing guns, murdering Cisneros, and shooting at Adams. All of the other offenses charged occurred in other counties and, therefore, according to defendant, his convictions on those charges must be reversed.

▌ The subject matter jurisdiction of every superior court in California embraces the entire State of California. A California superior court has

---

*See footnote, *ante,* page 423.

[1] All statutory references hereinafter, unless otherwise noted, are to the Penal Code.

subject matter jurisdiction to conduct felony trials and to impose sentences for felonies defined by California statutes, as long as the felonies are committed within the state, even though some or all of them may be committed outside of the county in which that court sits. (4 Witkin and Epstein, Cal. Criminal Law (2d ed. 1989) Jurisdiction and Venue, § 1868, p. 2207.) Such a court does, however, act in excess of its territorial jurisdiction if, in violation of section 777,[8] it conducts a trial for an offense committed outside of the county in which it sits, over objection, and a judgment of conviction resulting from such a trial would be subject to reversal on appeal. (*Ibid.*) "Finally, . . . although subject-matter jurisdiction cannot be conferred on a court by consent of the parties, territorial jurisdiction can be so conferred." (*People* v. *Tabucchi* (1976) 64 Cal.App.3d 133, 141 [134 Cal.Rptr. 245].) " '[T]erritorial jurisdiction' [venue[9]] is the nonfundamental, waivable aspect of jurisdiction." (*People* v. *Jackson, supra,* 150 Cal.App.3d at p. Supp. 8.)

In the present case, at the conclusion of the presentation of evidence at defendant's preliminary hearing, his attorney raised the issue of territorial jurisdiction, contending that the Solano County Superior Court had no jurisdiction over those crimes which were committed in Yolo County.[10] The magistrate disagreed, and held defendant to answer for all of the crimes eventually charged in the information, including the Yolo County assaults. Thereafter, during the pendency of the case in superior court, defendant did not again raise the issue.

■ The People contend that defendant's failure to object to an exercise of territorial jurisdiction by the Solano County Superior Court while his case was pending in that court constituted a consent to that exercise which conferred jurisdiction on the court. Defendant, on the other hand, contends, "The issue, correctly viewed, is merely one of the sufficiency of the evidence. The fundamental error is that the People failed to prove that the offenses were properly tried in Solano County. The election not to raise the issue by motion under § 995 is not a bar to raising it in this appeal, any more than the absence of a § 995 motion would preclude a defendant on appeal from raising any other sufficiency-of-the-evidence issue."

---

[8] Section 777 provides, "Every person is liable to punishment by the laws of this State, for a public offense committed by him therein, except where it is by law cognizable exclusively in the courts of the United States; and except as otherwise provided by law the jurisdiction of every public offense is in any competent court within the jurisdictional territory of which it is committed."

[9] "In California [the terms 'territorial jurisdiction' and 'venue'] merge because the basic venue statute for criminal offenses [section 777] places venue in the 'jurisdictional territory' where the offense was committed." (*People* v. *Jackson* (1983) 150 Cal.App.3d Supp. 1, 8 [198 Cal.Rptr. 135].)

[10] The defense attorney made no similar contention with respect to the Contra Costa County robbery.

We reject defendant's effort to equate proof of proper venue with proof of the elements of an offense. If an allegation in an information or indictment alleging a county in which a felony occurred corresponding to the county in which the case pends were an allegation of an "essential element of the crime charged," as suggested by language in *People* v. *Tabucchi, supra,* 64 Cal.App.3d at page 141 [134 Cal.Rptr. at page 250], no proceeding following a successful motion for change of venue could ever result in a valid judgment of conviction, an absurd result obviously not in accord with California criminal law as it is currently practiced. (See *People* v. *Jackson, supra,* 150 Cal.App.3d at pp. Supp. 13-14; 4 Witkin and Epstein, *op. cit. supra,* § 1868, p. 2208.)

The question presented by the present case is whether waiver of a defendant's right to trial of an alleged felony in the county of venue can be inferred from a mere omission to assert that right in superior court, or must be affirmatively shown on the record. Our criminal law recognizes both types of waiver. ■ For example, waiver of one's right to a jury trial must be affirmatively shown on the record. (*In re Tahl* (1969) 1 Cal.3d 122, 132 [81 Cal.Rptr. 577, 460 P.2d 449], cert. den. (1970) 398 U.S. 911 [26 L.Ed.2d 72, 90 S.Ct. 1708].) ■ Waiver of one's right to suppression of evidence seized as a result of an unreasonable search is inferred from a failure to assert that right in superior court, even if the right was previously asserted at a preliminary hearing in municipal court. (*People* v. *Lilienthal* (1978) 22 Cal.3d 891, 896 [150 Cal.Rptr. 910, 587 P.2d 706].)

■ In misdemeanor proceedings, section 1462 provides for an inference of consent to a municipal court's exercise of territorial jurisdiction over an offense committed outside the county in which it sits, "unless the defendant, at the time he pleads, requests an order transferring the action or proceeding to the proper court." (*People* v. *Jackson, supra,* 150 Cal.App.3d at pp. Supp. 10-11.) No comparable statutory provision governs the question of consent to a superior court's exercise of its territorial jurisdiction.

■ In the absence of such a statute, we believe that the *Lilienthal* rule governs waiver of objection to a superior court's exercise of its territorial jurisdiction. Even though a defendant might raise a venue objection at the preliminary hearing level, "it would be wholly inappropriate to reverse a superior court's judgment for error it did not commit and that was never called to its attention." (*People* v. *Lilienthal, supra,* 22 Cal.3d at p. 896.)

Defendant suggests that the right which he seeks to assert on appeal is more than the mere statutory right embodied in section 777, that it is a federal constitutional right, arising under the Sixth and Fourteenth Amendments, to a trial by a jury drawn from residents of the county (or, in

common law parlance, the "vicinage") in which his crimes were committed. (Quoting *People* v. *Bradford* (1976) 17 Cal.3d 8, 15-17 [130 Cal.Rptr. 129, 549 P.2d 1225] and citing *People* v. *Bismillah* (1989) 208 Cal.App.3d 80 [256 Cal.Rptr. 25]; cf. *Hanson* v. *United States* (9th Cir. 1960) 285 F.2d 27, 28.) However, *Lilienthal* deals no less with a Bill of Rights guaranty which is made applicable to state criminal prosecutions through the operation of the Fourteenth Amendment. (*Mapp* v. *Ohio* (1961) 367 U.S. 643, 655-660 [6 L.Ed.2d 1081, 81 S.Ct. 1684, 1090-1093, 84 A.L.R.2d 933].) To consider the right which defendant asserts to be a right of federal constitutional dimension is no bar to application of the *Lilienthal* rule of implied waiver of that right.

We conclude that defendant's failure to make any venue or vicinage objection in superior court precludes him from raising the point on appeal.

The judgment is affirmed.

Racanelli, P. J., and Newsom, J., concurred.