[No. D012059. Fourth Dist., Div. One. July 19, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD ROBERT SERING, Defendant and Appellant.

COUNSEL

Jeffrey J. Stuetz, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, George Williamson, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Robert M. Foster and Nancy L. Palmieri, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

FROEHLICH, J.— ▮▮▮ ▪ ▪ A jury convicted Richard Robert Sering on two counts of robbery (Pen. Code,[1] § 211) and one weapon use enhance-

---

[1] All statutory references are to the Penal Code unless otherwise specified.

ment (§ 12022, subd. (a)).[2] He received a total sentence of five years, less custody and time-served credits. Sering appeals, contending (1) the San Diego County Superior Court lacked territorial jurisdiction over the May 25 robbery because there was insufficient evidence to establish *locus delicti* in San Diego County, and (2) the trial court committed reversible error by not instructing the jury sua sponte on the general principles of *locus delicti* regarding the May 25 robbery.

## FACTUAL AND PROCEDURAL BACKGROUND

During April and May 1989, a series of robberies occurred involving delivery-type pizza establishments (pizza robberies) in northern San Diego County and southern Orange County. Sering was charged with two of those robberies: a May 25, 1989, robbery in San Clemente (the Orange County robbery) and a May 31, 1989, robbery in Vista (the San Diego County robbery). Each of the counts carried a special allegation charging Sering with a weapons use enhancement under section 12022, subdivision (a). The prosecutor introduced eyewitness testimony positively identifying Sering as one of two men who committed both the Orange County and the San Diego County robberies. Sering was also linked to the entire series of pizza robberies through evidence of a common modus operandi.

Illustrative of the series of crimes was an attempted robbery of a Domino's Pizza in Oceanside, San Diego County, on April 14, 1989. The robbers, a Black man and a Caucasian man, were armed with handguns and wore red bandannas. Shots were fired during the robbery. Police recovered two .25-caliber rounds of ammunition: one spent casing and one live round. A few days later, Sering (who was detained and searched pursuant to an unrelated complaint) was found in possession of a loaded .25-caliber handgun. This gun was shown to have fired the bullet the spent casing for which was found at the scene of the April 14 attempted robbery. Moreover, the gun matched the description of a gun used in other pizza robberies.

The modus operandi of the Orange County robbery, with which Sering was charged, matched that of the other robberies in many respects. It involved two armed men, the leader being a Black male and the accomplice a Caucasian male. The robbers wore red bandannas. The robbery was committed against a Domino's Pizza establishment during the time frame associated with the other robberies (i.e., at about 11:20 p.m.). Also in

---

[2]Sering was also convicted of wearing a disguise during the robberies, in violation of section 185. Sering contends, and the People concede, section 654 precludes punishment under both sections 185 and 211 for his wearing a disguise during the robberies. (*People v. Perez* (1979) 23 Cal.3d 545, 551 [153 Cal.Rptr. 40, 591 P.2d 63].) Accordingly, we modify his sentence to exclude the five additional days imposed for the section 185 violation.

common with the other robberies, the employees were directed toward the rear of the store into a cooler; the money was placed in a grocery bag; and the accomplice (identified as Sering) had removed his mask and served as a lookout by posing as a customer holding a pizza box.

On May 31 between 10 and 11 p.m., a Domino's Pizza was robbed in San Marcos, using a similar modus operandi. A white or tan Ford Escort was seen carrying the robbers. The description of the Ford Escort matched the description of Sering's car. Sering was not charged with this robbery.

However, approximately one hour later another Domino's Pizza, located in the adjacent city of Vista, was robbed using a similar modus operandi (i.e., one Black and one Caucasian man, both wearing red bandanna masks, and one armed with a revolver, placed employees into cooler, etc.). Sering was identified as one of the two robbers and charged with and found guilty of this offense.

Because Sering's car was linked to one of the pizza robberies and Sering had been identified from a photo lineup as one of the robbers involved in the May 31 Vista crime, the task force conducted a surveillance of Sering's car and the apartment building in Oceanside where he lived. Sering was observed associating in the Oceanside area with Anthony Wilson, a person identified as the Black male who had participated in some of the pizza robberies. An officer who watched the pair for two weeks and followed them while they drove described their actions as "counter surveillance"— behaving as if they suspected they were being followed. Sering and Wilson stopped at two different Domino's Pizza stores during the surveillance period; however, there were no reported pizza robberies during that period.

A warrant to search Sering's apartment was subsequently issued and executed on June 30, 1989. Sering was not present, but Wilson was there. Two red bandannas, similar to those described as being worn by the perpetrator of the pizza robberies, were found inside a stereo cabinet in Sering's apartment.

After presentation of the evidence, Sering moved to dismiss all counts relating to the Orange County robbery, claiming there was insufficient evidence to establish *locus delicti* in San Diego County, and therefore the Superior Court of San Diego County lacked territorial jurisdiction. The motion was denied without comment. The appeal (except as pertains to the disguise count, referenced in fn. 2, *ante*) challenges only the conviction of the Orange County robbery.

### I. There Was Sufficient Evidence to Establish Locus Delicti in San Diego County

Locus delicti is the statutory (not constitutional) concept of a right to be tried in the county in which the crime was committed. (§ 777.) Establishment of locus delicti is a question of fact for the jury and requires proof only by a preponderance of the evidence. (People v. Jones (1964) 228 Cal.App.2d 74, 85-87 [39 Cal.Rptr. 302].)[3] Sering raised the question of adequacy of proof of locus delicti at the completion of the prosecution's case. The denial of his motion at this time inferentially constituted a finding by the judge that sufficient evidence had been introduced to permit submission of the issue to the jury.

Sering thereafter, however, did not renew his contention of insufficiency of the evidence, neither tendering jury instructions nor addressing argument on the point to the jury. The contention on appeal is not directed to the denial of the midtrial motion, but instead rests upon the premise that the jury could not have found locus delicti in San Diego County because there was insufficient evidence as a matter of law to permit such finding.

We conclude, below, that venue, even when phrased as locus delicti of a crime, is a matter which can be waived; and we conclude it was waived in this case. However, were we not to rest our decision on waiver, we would nonetheless uphold the judgment. Our review of the total record reveals considerable evidence from which a jury, if properly instructed and logically deliberative, could have found locus delicti in San Diego County.

The general provision of section 777, providing for trial in the county in which the crime occurred, is subject to several exceptions. Section 786, for instance, permits trial in the county to which the "fruits of a robbery" are brought. Section 781 provides for trial in any county in which

---

[3]As we state hereunder, the concept embraced by the phrase "locus delicti" is a matter of selection of proper venue. We note that venue disputes are sometimes resolved by pretrial proceedings. (See, e.g., People v. Remington (1990) 217 Cal.App.3d 423, 429 [266 Cal.Rptr. 183] [issue raised during preliminary hearing]; Bogart v. Superior Court (1964) 230 Cal.App.2d 874, 875 [41 Cal.Rptr. 480] [venue challenged by pretrial writ of prohibition].) Pretrial resolution of venue questions is, in our opinion, eminently superior to disposition of the matter by jury verdict. Because, as we explain below, venue is a waivable right, it is most appropriate that it be met, or waived, at the outset of proceedings. Further, the difference in burden of proof (preponderance of the evidence rather than proof beyond a reasonable doubt, as is typical for other issues in criminal proceedings) makes jury determination confusing at best. An instruction to the jury regarding locus delicti can become most attenuated and difficult, as it would have been in this case, because where the matter is in issue one will usually be dealing with an exception to the general rule. We do not, however, write upon a clean slate (see the authorities cited infra, at pp.689-691). A rule so firmly lodged in jurisprudential history is not amenable to modification by the intermediate appellate court.

"acts . . . constituting or requisite to the consummation of the offense occur," and this has been construed as including a county in which preliminary arrangements for the crime were made. (*People v. Abbott* (1956) 47 Cal.2d 362, 370 [303 P.2d 730].)

 Sering contends there is no evidence bringing the case within either of these exceptions. We disagree. The evidence, not only of the two charged robberies but of the several uncharged robberies, shows a course of conduct in San Diego County permitting an inference that all of the robberies were staged from the perpetrators' residence in north San Diego County: Wilson was a habitué of Sering's Oceanside apartment; Sering's car was used in one of the robberies and to "case" other Domino's Pizza sites; and implements similar to those used in the string of robberies were cached by Sering.[4] The circumstantial evidence surrounding all the robberies is sufficient for the jury to have concluded that the Orange County robbery was staged, planned and the events leading to it initiated in San Diego County.

II. *Venue Based on Locus Delicti Is Waivable, Not Jurisdictional; Hence No Sua Sponte Instruction on Locus Delicti Is Required*

A. *Venue Is a Waivable Right*

 Under section 777, the proper venue for trial is the county in which the crime was committed, subject to the various exceptions provided by statute. (See Pen. Code, §§ 777a-795.) While these statutes refer to the court having "jurisdiction" over the offense, it is now well settled that a superior court has fundamental (i.e., subject matter) jurisdiction over felonies committed anywhere within the state of California. The territorial prescriptions of section 777 refer *only* to the proper venue of the trial. (*People v. Remington, supra,* 217 Cal.App.3d 423, 428-429.)

 If a defendant waives his venue protections, an otherwise improper venue does not deprive the court of the power to try the defendant, since it still has subject matter jurisdiction over the trial. "[A]lthough subject matter jurisdiction cannot be conferred on a court by consent of the parties, [venue] can be so conferred." (*People v. Tabucchi* (1976) 64 Cal.App.3d 133, 141 [134 Cal.Rptr. 245].) A corollary to this rule is the recognition that venue is a ". . . *waivable* aspect of jurisdiction." (*People v. Jackson* (1983) 150 Cal.App.3d Supp. 1, 8 [198 Cal.Rptr. 135], italics added.) Thus, for example, one court has held that a claim of improper venue was deemed waived where

---

[4]The handgun, used in one of the robberies, was seized from Sering's person just outside his apartment, and a matching holster was found in his vehicle parked nearby. Disguises similar to those preferred by the robbers (i.e., the red bandannas) were found stored inside Sering's Oceanside apartment.

the defendant, although having raised the issue at the preliminary hearing, failed to tender the issue in the subsequent criminal trial in superior court. (*People* v. *Remington, supra,* 217 Cal.App.3d at pp. 429-431 [holding waiver of claim need not be affirmatively shown, but may be inferred from failure to assert right].)

Leading commentators have affirmed that the right to trial in a particular county is a personal protection afforded to the accused, waivable either by affirmative action or by failure of timely assertion. (1 Torcia, Wharton's Criminal Procedure (13th ed. 1989) Venue and Removal of Prosecution, § 34, p. 189; 2 LaFave & Israel, Criminal Procedure (1984) Venue, § 16.1, p. 335.) We find parallel analyses in the federal courts. "[V]enue, since it may be waived, is not an essential fact constituting the offense charged. [Citations.] . . . [V]enue may be waived [citation], and where, as here, the objection was not raised until after the jury had returned its verdict of guilty, we find that waiver did in fact occur. [Citations.]" (*United States* v. *Powell* (9th. Cir. 1974) 498 F.2d 890, 891; see also *Hagner* v. *United States* (D.C. Cir. 1931) 54 F.2d 446, 447-449 [60 App.D.C. 335] [exhaustively examining authorities and concluding complaints of improper venue are waived by failure to timely raise issue]; *Bickford* v. *Looney* (10th Cir. 1955) 219 F.2d 555, 556.)

That venue objections may be deemed waived by failure to assert the protection in a timely fashion finds further support in the cases upholding implied waiver of the closely related right of "vicinage."[5] ■ Venue and vicinage, although logically distinct concepts (*People* v. *Bismillah* (1989) 208 Cal.App.3d 80, 87 [256 Cal.Rptr. 25]), are nevertheless closely related, because vicinage usually follows venue (*ibid.*), the boundaries for proper vicinage being coterminous with the boundaries for proper venue. (*Hernandez* v. *Municipal Court, supra,* 49 Cal.3d at p. 729.) ■ The constitutionally guaranteed protections of vicinage can be deemed waived by failure to timely assert appropriate objections. (See *People* v. *Jones* (1973) 9 Cal.3d 546, 556 fn. 7 [108 Cal.Rptr. 345, 510 P.2d 705] [overruled on other grounds in *Hernandez* v. *Municipal Court, supra,* 49 Cal.3d 713, 729]; *People* v. *Barney* (1983) 143 Cal.App.3d 490, 493 fn. 1 [192 Cal.Rptr. 172] [dicta].) Since the constitutional vicinage protection may be deemed waived by failure to object, we apprehend the statutorily conferred venue protection should be no less amenable to implied waiver.

Lending further support to our conclusion that *locus delicti* venue can be waived is the rule applied in the parallel concept of improper venue on the

---

[5]"Vicinage" is the Sixth Amendment right to have the jury drawn from the district wherein the crime was committed. (*Hernandez* v. *Municipal Court* (1989) 49 Cal.3d 713, 721 [263 Cal.Rptr. 513, 781 P.2d 547].)

ground of prejudicial pretrial publicity. ■ A defendant's right to change of venue based on adverse publicity in the original *locus* of trial is based upon his right to a fair trial. (*Maine* v. *Superior Court* (1968) 68 Cal.2d 375, 382-384 [66 Cal.Rptr. 724, 438 P.2d 372].) Nevertheless, this *constitutional* right is subject to waiver by failure of timely assertion. (*People* v. *Laster* (1971) 18 Cal.App.3d 381, 387 [96 Cal.Rptr. 108].) We believe the policy supporting venue at the *locus delicti* is grounded in considerations similar to those pertaining to venue selection for pretrial publicity. While juror selection was originally designed to furnish the court with jurors having actual knowledge of the facts of the crime, modern jurors are selected with exactly the opposite objective. The current justification for *locus delicti* rules, therefore, is grounded in preventing the excessive costs, hardship and unavailability of witnesses which might result from trying a defendant in a county remote from the scene of the crime. (1 Torcia, Wharton's Criminal Procedure, *supra*, § 34, pp. 183-184 and fns. 8 & 9; *People* v. *Guzman* (1988) 45 Cal.3d 915, 934 [248 Cal.Rptr. 467, 755 P.2d 917].)

Because venue removal for pretrial publicity and original venue selection based on *locus delicti* are both designed to promote a fair and reasonable trial for the defendant, the applicability of waiver principles should be similar. Since waiver is cognizable in the constitutional concept of venue for prejudicial pretrial publicity, it should also apply to the statutory prescription of venue based on *locus delicti.*[6]

■ By failing to submit jury instructions on the subject of *locus delicti*, and failing to argue the issue to the jury, Sering effectively waived the issue. Sering's earlier motion was made only to the judge. Sering cannot omit raising the question to the jury and then complain that the jury has not specifically ruled on it.

### B. *There Is No Sua Sponte Obligation to Instruct on Venue Based on Locus Delicti*

■ The obligation of the court, on its own motion, to provide instructions to the jury, called a "sua sponte" instructional obligation, is narrow. (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 716-717 [112 Cal.Rptr. 1, 518 P.2d

---

[6]It should be noted that venue is not the only, nor arguably the most important, personal protection a defendant may waive by failure to timely raise his objection. For example, even though a properly raised plea of "former jeopardy" becomes, like venue based on *locus delicti*, a factual question for the jury (see *People* v. *Frank* (1933) 134 Cal.App. 211, 214 [25 P.2d 486]), failure to timely raise the issue waives the right to rely on the defense. (*People* v. *Franklin* (1976) 56 Cal.App.3d 18, 23 [128 Cal.Rptr. 94].) Similarly, the procedural protections afforded by section 995 are waived by failure to timely interpose the motion or objection (see § 996), as are challenges to the validity of a search and seizure. (*People* v. *Miranda* (1987) 44 Cal.3d 57, 81 [241 Cal.Rptr. 594, 744 P.2d 1127].)

913].) "Although in criminal cases the court must instruct the jury on its own motion as to applicable *general* legal principles, even though the parties fail to propose such instructions, the court need not render particular instructions as to specific points unless the parties request them *or they are essential to a fair trial.*" (*People* v. *Morse* (1964) 60 Cal.2d 631, 656 [36 Cal.Rptr. 201, 388 P.2d 33], italics added.) Our review of the cases affirming a sua sponte obligation reflects such obligation is imposed as to issues bearing directly upon the defendant's guilt or innocence of the charged offense. Sua sponte instruction is required, for instance, to define the basic elements of the charged offense (*People* v. *Jaso* (1970) 4 Cal.App.3d 767, 770-771 [84 Cal.Rptr. 567]); it is required to explain the concept of presumption of innocence and reasonable doubt (§§ 1096-1096a); the definition of lesser included offenses must be given sua sponte (*People* v. *Hood* (1969) 1 Cal.3d 444, 449-450 [82 Cal.Rptr. 618, 462 P.2d 370]); sua sponte instructions are also required for defenses negating mental elements of a crime, such as diminished capacity (*People* v. *Graham* (1969) 71 Cal.2d 303, 316-317 [78 Cal.Rptr. 217, 455 P.2d 153]), honest but unreasonable belief in the need for self-defense (*People* v. *Flannel* (1979) 25 Cal.3d 668, 674-683 [160 Cal.Rptr. 84, 603 P.2d 1]) or provocation (*People* v. *St. Martin* (1970) 1 Cal.3d 524, 531-532 [83 Cal.Rptr. 166, 463 P.2d 390]). These concepts are so central to the determination of guilt or innocence that to ensure a fair trial they must be explained to the jury regardless of defense counsel's failure to submit instructions.

In contrast to these issues, which are central to a finding of guilt or innocence, is the question of venue. ▮▮▮ Venue is not an essential element of the charged offense. (*People* v. *Remington, supra,* 217 Cal.App.3d at p. 430; see also *United States* v. *Powell, supra,* 498 F.2d at p. 891.) Unlike issues bearing on guilt or innocence, venue need not be shown beyond a reasonable doubt, but is instead provable (when placed in issue) by a mere preponderance of the evidence. " 'The state gives no assurance to its feloniously insubordinate citizens that the venue of their crimes will be fixed beyond a reasonable doubt; that doctrine applies only to the issue of guilt.' " (*People* v. *Harkness* (1942) 51 Cal.App.2d 133, 139 [124 P.2d 85].)

As explained by the Iowa Supreme Court, "Venue is not an essential element of the crime itself. [Citations.] Nor is it of the same nature as the insanity defense, which concerns the capacity of the defendant to commit the crime, nor the defenses of self-defense and entrapment, which provide justification or excuse for the defendant's criminal acts. Unlike those defenses or the elements of the crime, venue does not relate to the guilt or innocence of the defendant. [Citations.]" (*State* v. *Allen* (1980 Iowa) 293 N.W.2d 16, 20.)

The same theme is echoed by the federal court for the Fifth Circuit: "Failure to instruct on other essential elements of crimes, regardless of whether a defendant requests an instruction, is error. [Citations.] By contrast, the particular circumstances of a case determine whether failure to instruct on venue is plain error. [¶] . . . The rule in this circuit is that failure to instruct on venue is reversible error when the trial testimony puts venue in issue *and the defendant requests the instruction.*" (*United States* v. *Winship* (5th Cir. 1984) 724 F.2d 1116, 1124-1125, italics added; see also *Hagner* v. *United States, supra,* 54 F.2d 446; *United States* v. *Powell, supra,* 498 F.2d at p. 891; *United States* v. *White* (5th Cir. 1980) 611 F.2d 531.)[7]

 It readily follows that if a defense is waivable, as we concluded in part II of this opinion, there should be no sua sponte obligation to instruct respecting it. The defense is waivable because it does not pertain to a fundamental determination in the quest for guilt or innocence. For the same reason, and perhaps simply looking at the mirror image of the same issue, there is no sua sponte instructional requirement.

III. *The California Cases Relied Upon by Sering Do Not Undermine the Conclusion That Venue Instructions Are Not Required Sua Sponte*

Notwithstanding the logic supporting the conclusion that venue is a waivable right, and contrary to the out-of-state authorities cited for that proposition set forth above, Sering argues venue instructions are required sua sponte because California cases have imposed proof of venue as an essential facet of the prosecution's case. If venue proof were tantamount to establishment of an element of the crime, then failure of proof would logically require acquittal of the substantive charges. However, while the California cases which Sering cites do state that "*locus delicti*" is a question of fact for the jury (see, e.g., *People* v. *Megladdery* (1940) 40 Cal.App.2d 748, 762 [10 P.2d 84]) and that the prosecution has the burden to introduce evidence of proper venue (*People* v. *Pollock* (1938) 26 Cal.App.2d 602, 603-604 [80 P.2d 106]), we are aware of no California case directly holding that insufficient proof of venue mandates acquittal of the substantive charge, and we are convinced such is not the rule. If properly raised, the refusal to instruct on the issue of venue, and the omission to present the issue to the jury, could result in reversal and an order for new trial. (*People* v. *Megladdery, supra,* 40 Cal.App.2d 748.) We have found no authority, however, for the proposition that failure of venue proof requires *acquittal.* Two groups of

---

[7]Some federal courts have concluded it is not reversible error to refuse to instruct on venue, even when *requested* by the defendant, if the evidence strongly suggests venue was proper. (See *United States* v. *Boswell* (4th Cir. 1967) 372 F.2d 781, 783; *United States* v. *Grammatikos* (2d Cir. 1980) 633 F.2d 1013, 1023.)

cases discuss the issue, suggest acquittal as a remedy, but are distinguishable.

In one group of cases, exemplified by *People* v. *Cavanaugh* (1955) 44 Cal.2d 252 [282 P.2d 53], the jury was instructed that in order to convict the defendant it was necessary to find by a preponderance of the evidence that the fatal blow was inflicted, and the victim died, in San Diego County. (*Id.* at p. 262.) However, the court's approval of such instruction is dictum, since the only questions at issue were whether venue can be shown by a preponderance of evidence and whether venue can be established by inferences from circumstantial evidence. (*Ibid.*) The *Cavanaugh* court ultimately concluded the evidence was sufficient to support jurisdiction, but nowhere in *Cavanaugh* is there any holding that insufficient proof of venue mandates acquittal. Several other cases on which Sering relies are similar to *Cavanaugh*, and hence provide no support for the contention.[8]

 Cases in a second group relied upon by Sering hold that the failure to introduce sufficient evidence of venue is ground for reversal, but simply reverse and remand for a new trial, without indicating what effect a lack of showing of venue would have on the verdicts regarding the substantive charges.[9] (See *People* v. *Parks* (1872) 44 Cal. 105; *People* v. *Roach* (1874) 48 Cal. 382; *People* v. *Meseros* (1911) 16 Cal.App. 277 [116 P. 679]; and *People* v. *Pollack* (1938) 26 Cal.App.2d 602 [80 P.2d 106].) Nothing in these decisions states or holds that insufficient evidence of venue requires acquittal of the substantive charges.

---

[8]Thus, in the cases of *People* v. *Brock* (1937) 21 Cal.App.2d 601 [70 P.2d 210], *People* v. *Jones, supra,* 228 Cal.App.2d 74, and *People* v. *Price* (1989) 210 Cal.App.3d 1183 [259 Cal.Rptr. 282], the courts affirmed the convictions and found sufficient evidence of proper venue. Also, in *People* v. *Fellows* (1923) 63 Cal.App. 557 [219 P. 80], the court only considered defendant's claim that the instruction, as worded, improperly directed a verdict on venue. Thus, these courts had no occasion to consider whether *lack* of proof of venue required acquittal of the substantive offense, rendering their discussion thereof pure dictum.

[9]Moreover, even if these cases could be broadly construed as holding that insufficient evidence of venue must result in acquittal, subsequent case law on double jeopardy protections severely undermines continued vitality of such "holdings." In each of these older cases, the courts, having determined the evidence of venue was insufficient, followed their reversals with an order *remanding for a new trial.* If insufficient evidence of venue, like insufficient evidence of guilt, required a jury to acquit the defendant of the substantive offenses, recent cases would preclude remand for a new trial. Recent authorities clearly state that when an appellate reversal is based on insufficient evidence, a new trial is barred because retrial is precluded by double jeopardy protections. (*Burks* v. *United States* (1978) 437 U.S. 1, 11 [57 L.Ed.2d 1, 9-10, 98 S.Ct. 2141]; *People* v. *Trevino* (1985) 39 Cal.3d 667, 699 [217 Cal.Rptr. 652, 704 P.2d 719].) Since the authorities cited by Sering concluded insufficient evidence of venue was properly remedied by a new trial, they would appear irreconcilable with these subsequent authorities, at least to the extent they "hold" proof of venue is germane to determinations of guilt or innocence.

Only one case, *People* v. *Megladdery, supra,* 40 Cal.App.2d 748, has directly discussed the concept that lack of proof of venue requires acquittal of the substantive charges. (*Id.* at pp. 756, 765-766.) *Megladdery*'s discussion, however, is at best dictum, because the central issue in *Megladdery* is whether the trial court's order granting a new trial was beyond the powers bestowed on trial courts under section 1181. While *Megladdery* does contain lengthy judicial ruminations on the subject of venue, its principal focus is whether venue is a question of fact for the jury or a question of law for the court, and its references to acquittal as the proper verdict for lack of proof of venue are pure dicta.

■■■ If, however, we are to assume *Megladdery does* hold that proof of venue is essential to conviction, we find its reasoning flawed and decline to follow it. Its conclusion rested upon the assumption that *locus delicti* venue is equivalent to subject matter jurisdiction.[10] *Megladdery*'s error lies in that assumption. As we concluded above, the power of a jurisdiction to try cases arising outside its political territory is restricted by the concept of subject matter jurisdiction, which is a nonwaivable restriction. (Cf. *People* v. *Buffum* (1953) 40 Cal.2d 709, 715-718 [256 P.2d 317].) This principle must be distinguished, however, from the waivable right of trial within a jurisdiction at the *locus* of the crime. (*People* v. *Tabucchi, supra,* 64 Cal.App.3d 133, 141.)

## IV. *Conclusion and Disposition*

Venue based on the *locus delicti* is a provision designed to benefit the defendant in terms of granting a site for the trial which may be advantageous to him. Since the right does not relate to issues central to a determination of guilt or innocence, it is waivable. The right to a particular venue may be waived expressly; it may also be waived impliedly by failing to request instructions to the jury on the subject and by failing to raise the issue in argument. Sering waived his venue rights in this case. Since the question of venue does not go to the central issue of guilt or innocence, there is no sua sponte obligation upon the court to instruct on the subject. By a parity of reasoning, failure of proof of *locus delicti*, although if raised as an issue by defense may require reversal and new trial, cannot result in acquittal of the

---

[10]As the *Megladdery* court stated: "[O]ur statutory law has determined, with certain exceptions, that an accused person is answerable only in the jurisdiction where the crime . . . was committed or occurred. [Citation.] It is an elementary principle of our jurisprudence that the question of jurisdiction over the subject matter can never be waived or conferred by consent. It seems quite clear to us that, from the standpoint of logic, the question of jurisdiction, whether it be local or general jurisdiction, is fundamentally and necessarily a question of fact, and that in a criminal case, the burden of proving that fact rests on the prosecution. . . . Where this fact is not proved, the verdict is contrary to the evidence . . . ." (40 Cal.App.2d at p. 762.)

defendant. For all these reasons Sering's appeal must fail, and his convictions are sustained.

## Disposition

The judgment is modified to delete the five-day sentence for the section 185 violation. The trial court is directed to amend the abstract of judgment accordingly and to forward a copy to the Department of Corrections. As modified, the judgment is affirmed.

Huffman, Acting P. J., and Nares, J., concurred.