J. DATO, dissenting.
As an intermediate appellate court, our primary role is to review *752 final decisions of the superior court for prejudicial error. We generally avoid broad legal policy pronouncements, leaving that to the Supreme Court and the Legislature. Sometimes policy considerations can play an important part in our decisions, but even then we take pains to assure that the policy questions are squarely presented by the facts of the case and necessary to the decision we are required to render. *32 I believe the majority's decision to entertain the writ petition in this case violates each of these salutary guidelines. The majority then compound this error by deciding the ill-framed legal issue in a manner that will materially impair the interests of California consumers by fundamentally altering the structure of consumer protection laws in this state. For these reasons, I respectfully dissent.
A
Let's start with what is really going on here. As is expressly authorized by statute ( Bus. & Prof. Code, § 17204[1] ), the Orange County District Attorney has charged defendant pharmaceutical manufacturers with engaging in a statewide unfair business practice in violation of the Unfair Competition Law. (UCL;§ 17200 et seq.) This statewide practice has allegedly harmed consumers in Orange County and throughout California in a similar fashion. The parties agree that should the court ultimately find the allegations of the complaint have been proved, it has the authority to issue statewide injunctive relief. But for a defendant in a state the size of California, a law enforcement action alleging a statewide unlawful business practice and seeking monetary relief creates, at least potentially, a substantial economic exposure. To the extent law enforcement can be Balkanized and monetary relief limited to local jurisdictions-especially early in the litigation-a defendant's "management" of the exposure is greatly facilitated. It is hardly surprising, then, that defendants in this case sought to craft a motion to "strike claims for restitution and civil penalties to the extent that those are not limited to Orange County."
But there is an immediate problem with use of the motion-to-strike mechanism, for nowhere in the motion do defendants identify any language they seek to excise from the complaint that specifically seeks restitution or civil penalties for acts and practices that occurred entirely outside Orange County. Tellingly, the motion to strike nowhere references the complaint's prayer for relief, which simply requests "restitution of any money acquired by Defendants' unlawful and unfair business practices," as well as "civil penalties for each act of unfair and unlawful competition."[2] Instead, defendants' motion sought to strike all references in the complaint to "California" users of defendants' products and/or events that occurred "in California." But these descriptive statements are plainly relevant to the request for statewide *33 injunctive relief. If for no other reason, this alone justifies the superior court's decision to deny the motion to strike.[3] *753 Even if the complaint were otherwise, what the District Attorney requests in terms of civil penalties and restitution is largely irrelevant, for it is the court that ultimately decides the proper scope of monetary relief. It is well settled that the court can award restitution even in the absence of such a request by the public prosecutor. ( People v. Pacific Land Research Co. (1977) 20 Cal.3d 10, 19, 141 Cal.Rptr. 20, 569 P.2d 125 [Even "if the People had not sought restitution ... the trial court could have ordered restitution on its own motion at the conclusion of the action on the merits."].) Why, then, do we reach out at the pleading stage to entertain a writ petition as to a purported request for relief that is unnecessary to the complaint?
Nor did the thoughtful trial judge make any overly broad or unnecessary pronouncements that require correction. Contrary to the majority's assertion, she never specifically ruled that the District Attorney could recover restitution or civil penalties for acts that took place entirely outside Orange County. She simply denied the motion and ordered defendants to answer the complaint. Indeed, responding to defense counsel's comment during oral argument about the supposed importance of determining "what damages are at issue in the case", the judge characterized those concerns as "a little premature."[4] Later she acknowledged that issues of monetary relief would be addressed, if necessary, in the future: "[I]f ... we are looking at civil penalties ..., that's kind of aways [sic ] down the road."[5]
"Aways [sic ] down the road," if I may be so bold to suggest, would be the proper time to address the proper scope of monetary relief in this case. Specifically, if and when the trial court decides to award restitution to consumers outside of Orange County or civil penalties based entirely on acts occurring in other parts of the state, that will be the time when this issue is *34 squarely presented. At the outset of the case-when the issue is not raised by the pleadings and was not decided by the trial court-is indisputably not the proper time.
B
It is well settled that an appellate court will review rulings on pleadings by writ only "rarely" ( Taylor v. Superior Court (1979) 24 Cal.3d 890, 894, 157 Cal.Rptr. 693, 598 P.2d 854 ) and "with extreme reluctance" ( Babb v. Superior Court (1971) 3 Cal.3d 841, 851, 92 Cal.Rptr. 179, 479 P.2d 379 ). While "writs are occasionally used to provide expedited interlocutory review of pleading issues, some extraordinary reason for this kind of priority treatment must appear." ( Burrus v. Municipal Court (1973) 36 Cal.App.3d 233, 236, 111 Cal.Rptr. 539, italics added.) These words of caution are particularly applicable to a motion to strike that does not challenge the plaintiff's ability to plead a valid claim, but merely seeks to edit the language of the *754 complaint in a manner that better suits the defendants' tactical purposes. Neither defendants nor the majority offer anything approaching an "extraordinary reason" to justify this court's decision to intervene at the pleading stage.
The propriety of extraordinary writ review aside, the decision to prematurely intervene in this case has unnecessarily placed this court in the middle of a jurisdictional turf spat between public prosecutors. In doing so the majority attempt to construct a solution in search of a problem. The alleged "problem" here is an overzealous district attorney who seeks to recover (1) restitution on behalf of residents of other counties, and (2) civil penalties based on business practices that have no connection to the district attorney's local jurisdiction. Apparently, this bothers the Attorney General, who wishes to limit and control all litigation involving statewide unlawful business practices, and perhaps other district attorneys in other counties, who may view the actions of the Orange County District Attorney as "poaching" on their ability to recover civil penalties that would otherwise flow into their own county's treasury.
Business and Professions Code section 17204 broadly permits UCL enforcement actions to be "prosecuted ... by the Attorney General or a district attorney ...." Either way, the action is pursued "in the name of the people of the State of California," just as in criminal cases. ( § 17204.) Section 17203 permits the court, ancillary to its injunctive power, "to restore to any person in interest any money or property, real or personal, which may have been acquired by means of" the unlawful or unfair practice. ( § 17203, italics added.) Section 17206 similarly authorizes the court to award a civil penalty for each UCL violation, "recover[able] in a civil action brought ... by the Attorney General [or] by any district attorney ...." ( § 17206, subd. (a).) Nothing in any of these *35 statutes limits a county district attorney to prosecuting UCL actions on behalf of citizens of in that particular county. Nor does anything in the UCL restrict a district attorney to recovering restitution on behalf of only county residents.
As justification for reaching out at the pleading stage to prematurely decide a major public policy issue not squarely presented or addressed by the trial court, the majority allude to vague notions of interference with the Attorney General's constitutional authority. They suggest that if a local district attorney can seek restitution on behalf of residents of other counties, or civil penalties attributable to violations in other counties, this would allow the district attorney "to impermissibly compromise and bind the Attorney General and the district attorneys of other counties," preventing them "from seeking further relief for violations occurring in their own communities." (Maj. opn., ante , at p. 747.) They then purport to interpret the relevant sections of the UCL to avoid a constitutional issue. (Maj. opn., ante , at p. 747-48.) Respectfully, the majority rely on a phantom constitutional concern to craft a cure that is worse than even the perceived disease.
The UCL is an exceedingly broad remedial statute designed to encourage multiple avenues of enforcement. (See Kasky v. Nike, Inc. (2002) 27 Cal.4th 939, 949-950, 119 Cal.Rptr.2d 296, 45 P.3d 243.) Indeed, a district attorney can prosecute a UCL claim based even on alleged violations of a statute that provides a different government agency with the sole authority to bring enforcement actions. ( People v. McKale (1979) 25 Cal.3d 626, 632-633, 159 Cal.Rptr. 811, 602 P.2d 731.) And as the majority recognize, "the civil remedies of the [UCL] were enacted because criminal *755 remedies were too often inadequate to protect the public, especially where corporate defendants were concerned." ( People v. E.W.A.P. Inc. (1980) 106 Cal.App.3d 315, 321, 165 Cal.Rptr. 73.) Pursuing litigation against corporate defendants is expensive, and the Legislature was doubtless aware that both financial and political considerations may sometimes discourage a public prosecutor from undertaking such a case. Consistent with the UCL's broad remedial purposes and the perceived need for vigorous enforcement, there is nothing unconstitutional about the Legislature's decision to permit and encourage multiple public prosecutors with overlapping lines of authority on the theory that more enforcement in this context is better than less.
Moreover, the concern about a local district attorney binding other prosecutors to an improper or inadequate settlement is as fanciful as it is premature. Where, as here, a district attorney brings a UCL enforcement action alleging a statewide unlawful business practice, the Attorney General as the state's chief law enforcement officer always has the authority to intervene and take over the case. As a prominent treatise explains:
[T]he Attorney General and the 58 district attorney offices have entered into an arrangement to coordinate *36 the filing of § 17200 actions. Every §§ 17200/17500 investigation must be logged onto the computer database under the name of the prospective defendant. That puts other DA offices and the AG on notice of the investigation, and gives the AG the opportunity to intervene, assume jurisdiction, and take control of the investigation and proceeding where the matter is deemed sufficiently important to warrant it, or where there appears to be a conflict among offices. (Stern, Cal. Practice Guide: Business & Professions Code Section 17200 Practice (The Rutter Group 2018) ¶ 9:6.)
Accordingly, there is no practical risk that a local district attorney will "compromise and bind" the Attorney General or district attorneys from other counties. Even if the Attorney General does not elect to formally intervene at the outset and take over a case, it can monitor and take appropriate action if and when the prosecuting district attorney proposes to settle.[6] Similarly district attorneys in other affected counties could consult with the Attorney General or ask the court to be heard as to any eventual settlement.
The majority's heavy reliance on People v. Hy-Lond Enterprises, Inc. (1979) 93 Cal.App.3d 734, 155 Cal.Rptr. 880 ( Hy-Lond ) is significantly misplaced. In that case, the Napa County District Attorney brought a UCL action against the operator of numerous skilled nursing facilities located throughout the state, only one of which was in Napa. Restitution was not at issue, and no one challenged the District Attorney's ability to seek civil penalties for violations occurring outside of Napa County.
The issue in the case involved the scope of a stipulated settlement between the District Attorney and the defendant. In exchange for general injunctive relief (i.e., comply with applicable laws in the future) and payment of civil penalties, the settlement made the Napa County District Attorney the "exclusive government agency" for enforcing the injunction. ( Hy-Lond, supra, 93 Cal.App.3d at p. 741, fn. 1, 155 Cal.Rptr. 880.) It further precluded anyone acting on behalf of the State of California *756 from prosecuting any UCL action against defendant "for alleged violations of any acts covered by the injunction." ( Id. at p. 741 fn. 2, 155 Cal.Rptr. 880.) It also purported to bar the State or any state administrative agency from taking any action to suspend or revoke defendant's license based on alleged acts referred to in the complaint. ( Ibid. ) If the stipulation were enforced, neither the state Attorney General nor relevant state administrative agencies nor district attorneys in other counties could take any action against the defendant based on either past or future law violations so long as the injunction remained in place. *37 Not surprisingly, the Hy-Lond court concluded that the Napa County District Attorney exceeded his authority in agreeing to the settlement-and the court erred in entering a judgment incorporating the settlement terms-because "an injunction cannot be granted to prevent the execution of a public statute by officers of the law for a public benefit." ( Hy-Lond, supra, 93 Cal.App.3d at p. 753, 155 Cal.Rptr. 880.) The problem was in limiting enforcement as to future violations. (See Avco Community Developers, Inc. v. South Coast Regional Com (1976) 17 Cal.3d 785, 800, 132 Cal.Rptr. 386, 553 P.2d 546 ["it is settled that the government may not contract away its right to exercise the police power in the future"].) In other words, said the Hy-Lond court, "the district attorney has purported to stipulate to restraints which the court could not properly impose." ( Hy-Lond, supra, 93 Cal.App.3d at p. 753, 155 Cal.Rptr. 880.) Here, the Orange County District Attorney hasn't offered to stipulate to anything, and the court hasn't proposed to approve any stipulation. No one has suggested limiting the power of the Attorney General or any district attorney to do anything, in the future or otherwise. Any musings by the Hy-Lond court about territorial limitations on the authority of the county district attorney are just that-musings.
C
The resounding theme so far is that we should not be deciding anything about a local district attorney's authority to request restitution and civil penalties attributable to victims and conduct outside the county. The issues the defendants seek to frame by means of their motion to strike are not squarely-or even unsquarely-presented. And certainly, there are no exceptional circumstances that warrant a departure from the general rule that we do not review undeveloped legal issues at the pleading stage of a lawsuit.
But even if the issues were properly presented in a procedural context that demanded their resolution, the majority opinion reaches the wrong result. If the Orange County District Attorney succeeds in proving his case, there is nothing inherently problematic about the court awarding restitution to statewide victims of defendants' unlawful business practice. As already noted, even absent a request by the District Attorney the court is empowered by section 17203 to award restitution to "to any person " adversely affected by the defendants' unlawful conduct. This includes, potentially, residents of counties other than Orange. And it is well established that the District Attorney's action will have no res judicata effect on a private party's restitution claim, except to the extent that the party signs a release. ( Payne v. National Collection Systems, Inc. (2001) 91 Cal.App.4th 1037, 1047, 111 Cal.Rptr.2d 260 ["traditional res judicata principles have no application to a judgment resulting from an unlawful competition law lawsuit filed by the Attorney General or another public prosecutor in a subsequent lawsuit *38 brought by a victim of improper *757 business practices"]; see Kamm v. California City Development Co. (9th Cir. 1975) 509 F.2d 205, 208 [victims who accepted restitution obtained in Attorney General action and signed releases were barred from pursuing private action].)
Nor should there be a problem with the court awarding civil penalties based on any statewide violations ultimately proven in this action. The penalties are the punishment imposed for each violation proved in a law enforcement action brought on behalf of the People of the State of California. If the violation is proved, the penalties are appropriately imposed. Assume a criminal defendant is charged with multiple offenses as part of a single crime spree that spanned several counties. Convicted of all offenses following a trial in one of the counties, surely the defendant would not be heard to argue that the district attorney could not request punishment and the court could not sentence him on any of the crimes he committed in a different county. (See, e.g., People v. Sering (1991) 232 Cal.App.3d 677, 684-685, 283 Cal.Rptr. 507.) And this would be true regardless whether the punishment is incarceration or a monetary fine. The result in this case, involving civil penalties, should be no different.[7]
The Attorney General is the "chief law enforcement officer of the State" with supervisory authority over district attorneys. ( Cal. Const. art. V, § 13.) District attorneys are county officers. ( Cal. Const. art. XI, § 1, subd. (b).) From these broad conceptual provisions the majority somehow infer a constitutional impediment to interpreting the UCL as allowing a district attorney to seek statewide monetary relief. (Maj. opn., ante , at p. 748.) But constitutional restrictions and limitations on the Legislature's power "are to be construed strictly, and are not to be extended to include matters not covered by the language used." ( Collins v. Riley (1944) 24 Cal.2d 912, 916, 152 P.2d 169.) "If there is any doubt as to the Legislature's power to act in any given case, the doubt should be resolved in favor of the Legislature's action." ( Ibid. ; Methodist Hosp. of Sacramento v. Saylor (1971) 5 Cal.3d 685, 691, 97 Cal.Rptr. 1, 488 P.2d 161.) Indeed, in seeking to avoid a supposed constitutional conflict, the majority's expansive interpretation of these constitutional provisions may have unwittingly created one. ( *39 Schabarum v. California Legislature (1998) 60 Cal.App.4th 1205, 1218, 70 Cal.Rptr.2d 745 ["the only judicial standard commensurate with the separation of powers doctrine is one of strict construction to ensure that [constitutional] restrictions on the Legislature are in fact imposed by the people rather than by the courts in the guise of interpretation"].)
D
Well-tested principles underlie the traditional reticence of intermediate appellate courts to engage in interlocutory writ review of trial court procedural rulings such as the one at issue in this case. (See Omaha Indemnity Co. v. Superior Court (1989) 209 Cal.App.3d 1266, 1273, 258 Cal.Rptr. 66.) Rarely do those principles so uniformly counsel against issuance of writ relief as they do here. In choosing to ignore these sound prudential considerations, the majority *758 reach out to unnecessarily resolve-incorrectly in my view-an internecine dispute among public prosecutors, to the ultimate detriment of the "public" we are all charged with serving.
I would deny the petition.

Statutory references are to the Business and Professions Code unless otherwise specified.

Statutory references are to the Business and Professions Code unless otherwise specified.

The majority assert that the District Attorney's complaint "specifically sought [civil] penalties for sales occurring throughout California" (maj. opn., ante , at p. 737), but nowhere specify where in the complaint they find this "specific" request.

Significantly, although it takes no formal position on defendants' motion to strike, the Attorney General's amicus brief agrees that allegations in the complaint regarding defendants' statewide misconduct may be entirely proper.

The fact that this comment was made in the context of argument on the demurrer rather than the motion to strike (maj. opn., ante , at p. 737, fn. 4) hardly changes the substance of the statement. The court was clearly stating that questions regarding the scope of monetary relief would be addressed at a later date, not now.

The majority opinion inexplicably concludes that this statement "in no way suggest[s] the court declined to reach the issue presented by petitioners' motion to strike." (Maj. opn., ante , at p. 737, fn. 4.) I see no way to read the statement other than as indicating the court was not ruling on the proper scope of monetary relief. And even assuming the statement was in some way ambiguous, why would we reach out at the pleading stage to issue an extraordinary writ correcting an implication that might or might not have been intended by the trial judge?

The trial judge in this case was particularly sensitive to this issue. She told defense counsel, "If you reach a settlement with the District Attorney ... and if the [Attorney General] comes in and says I want to be heard about this, you bet I'm going to let them be heard on this. ..."

It makes no difference that the penalties are allocated by statute to the county treasurer when the enforcement action is prosecuted by the local district attorney. (§ 17206, subd. (c).) It is certainly reasonable for the Legislature to conclude that revenue from the penalties should benefit the county whose resources were used to prosecute the action and recover the penalties. This is particularly true where the statute specifies that the funds thus recovered are to be used exclusively for the enforcement of consumer protection laws. (Ibid. )