209 Cal.App.3d 1266 (1989)
258 Cal. Rptr. 66
OMAHA INDEMNITY COMPANY, Petitioner,
v.
THE SUPERIOR COURT OF SANTA BARBARA COUNTY, Respondent; FRANK GREINKE et al., Real Parties In Interest.
Docket No. B036158.
Court of Appeals of California, Second District, Division Six.
April 26, 1989.
*1268 COUNSEL
Booth, Mitchel & Strange, Eileen Robinson and Kristin E. Meredith for Petitioner.
No appearance for Respondent.
Gary E. Hickman for Real Parties in Interest.
*1269 OPINION
GILBERT, J.
An attorney files a writ petition with the Court of Appeal pointing out an apparent error of the trial court. The Court of Appeal summarily denies the petition. The bewildered attorney asks, "Why?"
If this case does not answer the question, we hope the following rule will at least assuage counsel's frustration: (1) Error by the trial judge does not of itself ensure that a writ petition will be granted. A remedy will not be deemed inadequate merely because additional time and effort would be consumed by its being pursued through the ordinary course of the law. (Rescue Army v. Municipal Court (1946) 28 Cal.2d 460 [171 P.2d 8].)
In this action, plaintiffs are suing defendants for negligence. They are also suing defendants' insurance company in a cause of action for declaratory relief. Plaintiffs claim that they are third party beneficiaries of this insurance contract. The trial court has denied the motion of the insurance company to sever the declaratory relief cause of action, and the insurance company therefore seeks relief by way of extraordinary writ. We initially denied the writ, but after our Supreme Court directed us to issue an alternative writ, we shall now grant a writ of mandate.

BACKGROUND
Real parties Frank and Margaret Greinke owned rental property in the City of Santa Maria. In July of 1980, the Greinkes leased the premises to K.R. Trefts and Patricia M. Trefts. The lease agreement required the Trefts to purchase a general liability insurance policy for the mutual benefit of landlord and tenant. In July of 1982, Omaha Indemnity Company, an insurance company, issued a general liability policy to the Trefts.
The Greinkes claim that, on or about July 17, 1986, they became aware of damage to their property caused by an oil spill. They contend that the oil spill occurred during the Trefts' occupation of the property. The Greinkes demanded that Omaha compensate them, under the terms of the insurance policy, for the damage to the property. Omaha has purportedly denied coverage under the policy.
On March 14, 1988, the Greinkes sued the Trefts for damage resulting from the oil spill. They also sued Omaha for declaratory relief of their rights under the terms of the insurance contract.
Omaha demurred to the declaratory relief cause of action. In its demurrer it asserted that the Greinkes were not parties to the contract of insurance *1270 and, therefore, had no standing to pursue a claim for declaratory relief. (See Blank v. Kirwan (1985) 39 Cal.3d 311, 331 [216 Cal. Rptr. 718, 703 P.2d 58].) It contended that the Greinkes had alleged neither interest in the insurance policy nor a denial of coverage. Thus, Omaha reasoned that there is no case or controversy pending against it. (See Green v. Travelers Indemnity Co. (1986) 185 Cal. App.3d 544, 557 [230 Cal. Rptr. 13].)
(2) The trial court was correct in overruling the demurrer. The Greinkes allege that they are the intended beneficiaries of the insurance policy and that Omaha had denied them coverage. In such instances, an action for declaratory relief is appropriate. (General Ins. Co. of America v. Whitmore (1965) 235 Cal. App.2d 670, 673 [45 Cal. Rptr. 556].)
In the alternative, Omaha moved to sever the declaratory relief action from the tort lawsuit. Omaha claimed that it would suffer prejudice should the lawsuit against both itself and the Trefts go forward. Further, it pointed out that severance would promote judicial economy in that there would be no need to try the declaratory relief action should the tenants be found not liable.
Although Omaha has requested our review of this ruling, it has neglected to supply us with a copy of the reporter's transcript. This did not simplify our task of review. (See Sherwood v. Superior Court (1979) 24 Cal.3d 183, 186-187 [154 Cal. Rptr. 917, 593 P.2d 862].)
On August 2, 1988, we denied a petition for writ of mandate. On September 29, 1988, the Supreme Court granted a petition for review. It then ordered the case retransferred to us with the direction to issue an alternative writ in light of Evidence Code section 1155 and Moradi-Shalal v. Fireman's Fund Ins. Companies (1988) 46 Cal.3d 287, 306 [250 Cal. Rptr. 116, 758 P.2d 58].

DISCUSSION

A. Motion to Sever

Code of Civil Procedure section 1048, subdivision (b) states, in pertinent part: "The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any cause of action...."
In a negligence action, Evidence Code section 1155 precludes the use of evidence that a tortfeasor has insurance for the injury that he has allegedly *1271 caused. "The evidence [of a party being insured] is regarded as both irrelevant and prejudicial to the defendant." (1 Witkin, Cal. Evidence (3d ed. 1986) § 417, p. 391.)
Our Supreme Court has stated that the suing of an insured for negligence and the insurer for bad faith in the same lawsuit "`... obviously violate[s] both the letter and spirit of [Evid. Code, § 1155].' [Royal Globe Ins. Co. v. Superior Court (1979) 23 Cal.3d 880, 891 (153 Cal. Rptr. 842, 592 P.2d 329).] ... `... [U]ntil the liability of the insured is first determined, the defense of the insured may be seriously hampered by discovery initiated by the injured claimant against the insurer.' [Citation.]" (Moradi-Shalal v. Fireman's Fund Ins. Companies, supra, 46 Cal.3d at p. 306, italics in original.)
(3) "It is within the discretion of the court to order a severance and separate trials of such actions [citations], and the exercise of such discretion will not be interfered with on appeal except when there has been a manifest abuse thereof. [Citation.]" (McLellan v. McLellan (1972) 23 Cal. App.3d 343, 353 [100 Cal. Rptr. 258].) (4a) Although we find that the trial court abused its discretion when it denied Omaha's motion to sever (Downey Savings & Loan Assn. v. Ohio Casualty Ins. Co. (1987) 189 Cal. App.3d 1072, 1086 [234 Cal. Rptr. 835]), relief by way of extraordinary writ should not be considered a foregone conclusion.

B. Relief by Way of Extraordinary Writ - Why It Is Hard to Get, and Why We Initially Denied the Petition

Approximately 90 percent of petitions seeking extraordinary relief are denied. (See Cal. Civil Writ Practice (Cont.Ed.Bar 1987) § 2.2, p. 50.) Only rarely does the court give detailed reasons for its rejection of a petition. (E.g., Sherwood v. Superior Court, supra, 24 Cal.3d at pp. 186-187.) Instead, counsel is usually notified in a terse minute order or postcard that the petition is denied. (See Cal. Civil Writ Practice, supra, at § 10.27, p. 408; 8 Witkin, Cal. Procedure (3d ed. 1985) Extraordinary Writs, § 165, p. 801.)
Although, as a rule, the court states no reason for its denial of a petition, it will on occasion refer to an authority in support of its order of denial. This oblique message, ostensibly designed to enlighten, often has the opposite effect and promotes anxiety among those attorneys unable to tolerate either uncertainty or ambiguity.
Case law has done little to explain why appellate courts deny writ petitions. The subject is most commonly broached in those cases in which relief has been granted. The appellate court in dicta will briefly explain why *1272 extraordinary relief is typically not available. The discussion primarily centers on the unique circumstances of the case at hand that were found to warrant extraordinary relief. (See, e.g., Cianci v. Superior Court (1985) 40 Cal.3d 903, 908, fn. 2 [221 Cal. Rptr. 575, 710 P.2d 375].)
Just as case law has been disappointing as a source of information concerning the mysteries of the writ, so have attempts to impart information by hierophants of appellate practice. Those who have tried to extract a coherent set of rules from cases and treatises on writs have found it easier to comprehend a "washing bill in Babylonic cuneiform." (Gilbert & Sullivan, Pirates of Penzance (1879).)
The large number of rejections of writ petitions demonstrates that courts will not use their scarce resources to second-guess every ruling and order of the trial court, particularly when to do so would save neither time nor aid in the resolution of a lawsuit. (E.g., see Dondi Properties Corp. v. Commerce Sav. and Loan Ass'n (N.D.Tex. 1988) 121 F.R.D. 284, 286.)
Writ relief, if it were granted at the drop of a hat, would interfere with an orderly administration of justice at the trial and appellate levels. Reviewing courts have been cautioned to guard against the tendency to take "`... too lax a view of the "extraordinary" nature of prerogative writs ...'" (8 Witkin, supra, at § 141, pp. 782-783) lest they run the risk of fostering the delay of trials, vexing litigants and trial courts with multiple proceedings, and adding to the delay of judgment appeals pending in the appellate court. (Babb v. Superior Court (1971) 3 Cal.3d 841, 851 [92 Cal. Rptr. 179, 479 P.2d 379]; Agassiz v. Superior Court (1891) 90 Cal. 101, 103-104 [27 P. 49]; Burrus v. Municipal Court (1973) 36 Cal. App.3d 233, 236 [111 Cal. Rptr. 539].)
"If the rule were otherwise, in every ordinary action a defendant whenever he chose could halt the proceeding in the trial court by applying for a writ of prohibition to stop the ordinary progress of the action toward a judgment until a reviewing tribunal passed upon an intermediate question that had arisen. If such were the rule, reviewing courts would in innumerable cases be converted from appellate courts to nisi prius tribunals." (Mitchell v. Superior Court (1958) 50 Cal.2d 827, 833-834 [330 P.2d 48] (conc. opn. of McComb, J.).)
Particularly today, "in an era of excessively crowded lower court dockets, it is in the interest of the fair and prompt administration of justice to discourage piecemeal litigation." (Kerr v. United States District Court (1976) 426 U.S. 394, 403 [48 L.Ed.2d 725, 732, 96 S.Ct. 2119].)
*1273 Were reviewing courts to treat writs in the same manner as they do appeals, these courts would be trapped in an appellate gridlock. This in turn would cause ordinary appeals, waiting for review, to be shunted to the sidelines. One writer sees a writ petition as being a device used to "cut into line" ahead of those litigants awaiting determination of postjudgment appeals. (Davis, Tips for Obtaining a Civil Writ (Aug. 1985) Cal.Law. 55.)
The Court of Appeal is generally in a far better position to review a question when called upon to do so in an appeal instead of by way of a writ petition. When review takes place by way of appeal, the court has a more complete record, more time for deliberation and, therefore, more insight into the significance of the issues. "Unlike the ordinary appeal which moves in an orderly, predictable pattern onto and off the appellate court's calendar, writ proceedings follow no set procedural course." (Chernoff & Watson, Writ Lore (1981) 56 State Bar J. 12.)
Further, some issues may diminish in importance as a case proceeds towards trial. Petitioners seeking extraordinary writs do not always consider that a purported error of a trial judge may (1) be cured prior to trial, (2) have little or no effect upon the outcome of trial, or (3) be properly considered on appeal. (Hogya v. Superior Court (1977) 75 Cal. App.3d 122, 128 [142 Cal. Rptr. 325].)
An unrestrained exercise of the power to grant extraordinary writs carries the potential to undermine the relationship between trial and appellate courts. Writ petitions "`have the unfortunate consequence of making the judge a litigant, obliged to obtain personal counsel or to leave his defense to one of the litigants [appearing] before him' in the underlying case. [Citations.]" (Kerr v. United States District Court, supra, 426 U.S. at pp. 402-403 [48 L.Ed.2d at p. 732].) Judges should be umpires rather than players.
(5) In order to confine the use of mandamus to its proper office, the Supreme Court, in various cases, has stated general criteria for determining the propriety of an extraordinary writ: (1) the issue tendered in the writ petition is of widespread interest (Brandt v. Superior Court (1985) 37 Cal.3d 813, 816 [210 Cal. Rptr. 211, 693 P.2d 796]) or presents a significant and novel constitutional issue (Britt v. Superior Court (1978) 20 Cal.3d 844, 851-852 [143 Cal. Rptr. 695, 574 P.2d 766]); (2) the trial court's order deprived petitioner of an opportunity to present a substantial portion of his cause of action (Brandt, supra, at p. 816; Vasquez v. Superior Court (1971) 4 Cal.3d 800, 807 [94 Cal. Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513]); (3) conflicting trial court interpretations of the law require a resolution of the conflict (Greyhound Corp. v. Superior Court (1961) 56 Cal.2d 355, 378 [15 Cal. Rptr. 90, 364 P.2d 266]); (4) the trial court's order is both clearly erroneous as a *1274 matter of law and substantially prejudices petitioner's case (Babb v. Superior Court, supra, 3 Cal.3d at p. 851; Schweiger v. Superior Court (1970) 3 Cal.3d 507, 517 [90 Cal. Rptr. 729, 476 P.2d 97]); (5) the party seeking the writ lacks an adequate means, such as a direct appeal, by which to attain relief (Phelan v. Superior Court (1950) 35 Cal.2d 363, 370-372 [217 P.2d 951]); and (6) the petitioner will suffer harm or prejudice in a manner that cannot be corrected on appeal (Valley Bank of Nevada v. Superior Court (1975) 15 Cal.3d 652 [125 Cal. Rptr. 553, 542 P.2d 977]; Roberts v. Superior Court (1973) 9 Cal.3d 330 [107 Cal. Rptr. 309, 508 P.2d 309]). The extent to which these criteria apply depends on the facts and circumstances of the case. (Hogya v. Superior Court, supra, 75 Cal. App.3d at pp. 127-130.)
(6) To adequately and intelligently decide the issues in this case or any other case, the court must have a complete record. (Sherwood v. Superior Court, supra, 24 Cal.3d at pp. 186-187.) (4b) Here, we did not have a copy of the reporter's transcript, and consequently did not know whether the court had even denied the motion to sever. The minute order states only that the court did not grant the demurrer.
After the Supreme Court remanded the matter to this court, at oral argument the parties stipulated that respondent court had denied the motion to sever. This was helpful, but we still do not know upon what grounds the trial judge made his decision.
(7) It is true that mandate, in certain instances, provides a more effective remedy than does appeal for the purpose of reviewing an order denying severance. (State Farm etc. Ins. Co. v. Superior Court (1956) 47 Cal.2d 428 [304 P.2d 13].) If, however, the trial court here denied the motion for severance without prejudice to bring the motion at a later time, writ relief would be inappropriate.
Under such circumstances, the failure to order severance would not meet the definition of an "irreparable injury." It would constitute, at best, an "irreparable inconvenience." (Ordway v. Superior Court (1988) 198 Cal. App.3d 98, 101, fn. 1 [243 Cal. Rptr. 536].) Upon proper application at a later time, Omaha may have succeeded in obtaining an order for severance. (8) A trial court is entitled to change its mind before judgment (Ziller Electronics Lab GMBH v. Superior Court (1988) 206 Cal. App.3d 1222, 1231 [254 Cal. Rptr. 410]; Tract Development Service, Inc. v. Kepler (1988) 199 Cal. App.3d 1374, 13864 [246 Cal. Rptr. 469]) and may vacate a prior order for consolidation and order severance. (Seidell v. Tuxedo Land Co. (1934) 1 Cal. App.2d 406 [36 P.2d 1102].)
(4c) Here, however, there is no indication that the motion was denied without prejudice. (9), (4d) The Supreme Court's order directing that an *1275 alternative writ be issued constitutes a determination that, in the ordinary course of the law, the petitioner is without an adequate remedy. (Payne v. Superior Court (1976) 17 Cal.3d 908, 925 [132 Cal. Rptr. 405, 553 P.2d 565].)
Let a writ of mandate issue ordering respondent superior court to grant the motion to sever. The stay of proceedings is dissolved.
Stone (S.J.), P.J., and Abbe, J., concurred.