74 Cal.Rptr.3d 345 (2008)
161 Cal.App.4th 488
COSTCO WHOLESALE CORPORATION, Defendant and Petitioner,
v.
The SUPERIOR COURT of the State of California for the County of Los Angeles, Respondent;
Greg Randall et al., Plaintiffs and Real Parties in Interest.
No. B197692.
Court of Appeal of California, Second District, Division Three.
March 27, 2008.
*347 Seyfarth Shaw LLP, Kenwood C. Youmans, David D. Kadue and Aaron R. Lubeley, Los Angeles, for Defendant and Petitioner.
No appearance for Respondent.
Hagens Berman Sobol Shapiro LLP, Reed R. Kathrein, Berkeley, Lee M. Gordon, Elaine T. Byszewski, Los Angeles, and Steve W. Berman; Rehwald Glasner & Chaleff, Lawrence Glasner, William Rehwald and Daniel Chaleff, Woodland Hills, for Plaintiffs and Real Parties in Interest.
*346 ALDRICH, J.

I.

INTRODUCTION
In the underlying lawsuit in this matter, real parties in interest (hereinafter collectively referred to as plaintiffs)[1] allege that prior to September 2001, defendant and petitioner Costco Wholesale Corporation (Costco) misclassified certain managers as exempt employees. Plaintiffs assert they have a right to inspect a letter that has been redacted by the trial court. In this writ of mandate proceeding, Costco asks this court for extraordinary relief contending the letter is protected from disclosure *348 by the attorney-client privilege and the work product doctrine and it will be harmed by the disclosure of the redacted letter. We conclude that extraordinary relief is not warranted because Costco has not demonstrated how it will be irreparably harmed by the release of the letter as redacted. Thus, we deny the request for a writ of mandate.

II.

FACTUAL AND PROCEDURAL BACKGROUND

A. The initial facts.

Costco "operates `cash-and-carry membership warehouses' throughout the United States." (Ellis v. Costco Wholesale Corp. (N.D.Cal.2005) 372 F.Supp.2d 530,0 534.) "Costco's nationwide operations are divided into three divisions (Southwest, Eastern, and Northern/Midwest), each governed by an Executive Vice President. ... These divisions are in turn divided into regions managed by Senior Vice Presidents.... Each Costco region is broken down into districts, led by District Vice Presidents, which are in turn composed of numerous Costco warehouses.... Each Costco warehouse is staffed with a General Manager, multiple Assistant Managers, and a team of staff level, area, and department managers...." (Ellis v. Costco Wholesale Corp. (N.D.Cal.2007) 240 F.R.D. 627, 634.)
Costco operates over 100 warehouse stores in California. Each store has hundreds of employees and up to 20 managers, including a general manager. A "general manager" is an onsite supervisor within a warehouse. It appears the general manager was the person most senior at each warehouse. Certain managers within Costco warehouses include the "meat, bakery, pharmacy, service deli, optical, hearing aid, tire center, photo lab, and food court managers. These and other managers are commonly referred to as 'ancillary managers.'"
Senior operations personnel at Costco determine how to classify employees for compensation purposes. At the time pertinent to this case, there were approximately 20 operations people who made such decisions. The operations personnel included district vice presidents and others senior to general managers.
"Exempt" employees (those engaged in managerial tasks) are not entitled to overtime payments.
In June 2000, Costco's then corporate counsel (attorney Donna M. Brandon) engaged "the law firm[ ] of Sheppard Mullin ... to undertake [a] comprehensive factual investigation and legal analysis regarding the classification of managers within Costco Warehouses." Attorney Kelly L. Hensley handled the assignment.
Attorney Hensley interviewed two Costco warehouse managers. According, to attorney Hensley, she assured the two warehouse managers that "their communications would be treated as confidential and protected by attorney-client privilege." Also, according to attorney Hensley, she relied upon "the information [she] received from Costco, [her] legal research, and [her] expertise with respect to wage and hour law" to write, a 22-page letter to attorney Brandon dated August 4, 2000, "addressing the exempt status of certain Costco warehouse managers in California." According to attorney Hensley, the letter reflected her "legal advice to [Costco] and also [her] own impressions, conclusions, and legal research."
"During 2000 and 2001, there were discussions at various operational meetings regarding the job responsibilities of certain managers within the Costco warehouses, including [the ancillary managers]." *349 Keith Miyahira, who was corporate counsel in 2000 to 2001, attended these meetings and communicated legal advice regarding the exemption defense for ancillary managers, including what tasks would be exempt from overtime requirements under California law. However, attorney Miyahira did not play any role in the decision as to whether to classify these managers as exempt or non-exempt.
In 2001, Costco decided to reclassify the ancillary managers from exempt to salaried, non-exempt employees. Thus, these employees would receive overtime for "work over 8 hours a day or 40 hours a week." This decision was implemented in September 2001. According to John C. Matthews, the "person most knowledgeable," the reclassification decision was not based upon a belief that the affected managers had been uniformly mis classified, rather the decision was made because it was cumbersome to police daily duties of department managers to ensure that they continued to meet Costco's expectations of managers. According to Costco, the decision was for operational simplicity and efficiency and to avoid a wave of potential litigation.

B. The lawsuit and discovery.

1. The pleadings.

The original class action complaint was filed in May 2003. It, and subsequently filed amended complaints, alleged Costco unlawfully failed to pay overtime to ancillary managers, including department managers, because Costco categorically had misclassified these employees as exempt employees.
Costco answered the class action complaint, pleading as an affirmative defense that plaintiffs were exempt from the protection of the California overtime laws (the exemption defense).

2. The discovery.

In January 2004, plaintiffs served written discovery seeking documents related to the investigation of the exempt classification for Costco's managers in California.
Costco objected to production of communications involving its counsel on the grounds of attorney-client privilege and work product doctrine.[2] The documents Costco withheld, based on privilege claims, were listed in Costco's privilege log. The privilege log identified Sheppard Mullin's August 4, 2000, 22-page letter.
In response to interrogatories propounded by plaintiffs, Costco stated that the basis for its exemption defense was the following: "During the relevant time period, salaried Costco managers were assigned job duties that required them to exercise independent judgment and discretion. Among these duties was the direction and supervision of other employees. Defendant reasonably expected that employees who held the position of salaried Costco manager regularly and customarily exercised their independent judgment and discretion performing such exempt tasks (and other tasks closely and directly related to such exempt tasks) for more than 50% of their time." [3] (Italics added.)

*350 3. The deposition of Matthews.

On January 19, 2006, plaintiffs took the deposition of John C. Matthews, Costco's person most knowledgeable about Costco's exemption defense. Matthews was Costco's senior vice president of human resources and risk management.
Matthews testified about Costco's reasonable expectations regarding the duties of managers historically classified as exempt. He testified that in making the classification decision, Costco gathered information during interviews with managers. Matthews also testified that Costco relied, in part, on input from counsel in classifying its employees as exempt or nonexempt. During the deposition, Costco's counsel explicitly stated that Costco was not relying upon the advice of counsel defense. Costco's counsel instructed Matthews not to relay any information as to what was discussed during interviews with Costco's attorneys.
Thereafter, plaintiffs stated in a letter that they considered Costco had waived attorney-client and work product privileges regarding the legal advice given by Sheppard Mullin to Costco. In response, Costco reiterated that it was not asserting the advice of counsel defense and that its "reasonable expectation" exemption defense was not dependent upon legal advice.

4. The motion to compel.

In April 2006, plaintiffs filed a motion to compel production of documents regarding Costco's exemption defense, including its investigation into, knowledge of, and reasonable expectations as to, how junior managers spent their time at work (pre-September 2001). Plaintiffs contended Costco waived any privilege by placing its knowledge and expectations at issue.[4] In part, plaintiffs argued that "Costco affirmatively placed the requested information directly at issue by basing its exemption defense on its `reasonable expectation' that junior managers spent most of their time on managerial tasks. Plaintiffs have a right to show that Costco actually knew and expected the exact opposite, i.e., that Costco investigated the work of its junior managers and learned that they were spending most of their time doing handson work. Furthermore, Costco relied on counsel's input to support its exemption defense. In essence, Costco testified that it reasonably expected junior managers to be primarily engaged in management *351 tasks based on input from in-house counsel."
Plaintiffs sought, among other documents, the August 4, 2000, Sheppard Mullin letter.
In opposition, Costco argued the communications were protected by the attorney-client privilege and work product doctrine. Costco denied it had waived any privilege. Costco stated it had not asserted "advice of counsel" as a defense in the litigation and its counsel merely played the traditional role of counsel in conveying legal advice.

a. The referee's recommendation.

On May 25, 2006, the matter came on for hearing. In an order filed on June 6, 2006, the trial court ordered Costco to produce a copy of the August 4, 2000, 22-page letter prepared by Sheppard Mullin "regarding the comprehensive factual investigation into the exemption classification of departmental managers[ ]" for an in camera inspection by a referee for a review, and determination as to "whether and what information in the document constitutes privileged legal advice." Costco objected to the in camera review, suggesting it was improper unless the trial court first made a waiver finding.
The in camera inspection was conducted by a referee. The referee reviewed the August 4, 2000, letter to determine the extent to which it contained privileged legal advice. Before making any findings, the referee reviewed the letter and issued a tentative decision, accompanied by a redacted version of the letter that left only those parts the referee considered to be not protected by attorney-client or work product privileges. The referee provided Costco with a copy of the letter showing how she had redacted it.
Pursuant to the opportunity provided to it by the referee, Costco submitted objections to the tentative recommendation, including that (1) no parts of the letter should be disclosed because its express purpose had been to communicate a confidential legal opinion and analysis from outside counsel to corporate counsel about the legal risks involved in maintaining certain managers as exempt from California's overtime laws; and (2) the letter had been intended to be privileged and contained opinions and conclusions of counsel based on confidential written and oral communications with Costco's senior management, specifically warehouse managers. Costco did not object to the disclosure of the name, address, and telephone number of the sender or the recipient of the letter, which Costco acknowledged was about an exemption review. Costco also did not object to the descriptive titles used in the letter which disclosed which positions had been discussed in the letter, e.g., "hearing center manager" and "photo operator." Costco objected to disclosing any other information contained in the letter.
On January 4, 2007, the referee issued a final recommendation concluding that Costco's asserted privileges protected parts of the 22-page letter, but the portions that the referee had not redacted were not protected. The referee recommended the following:
"I find that all of the redacted text (including all text on pages 2-9 and 17-21) constitutes attorney[-]client communications and/or the type of attorney observations, impressions and opinions plainly protected as work product. However, the unredacted text, which involves factual information about various employees' job responsibilities, is not protected by the attorney[-]client privilege or the work product doctrine. [] Ms. Hensley's factual observations are based on non-privileged documents *352 (Costco's written job descriptions) and interviews with two Costco managers. Under D.I. Chadbourne[,] Inc. v. Superior Court (1964) 60 Cal.2d 723, 36 Cal.Rptr. 468, 388 P.2d 700, statements obtained in attorney interviews of corporate employee witnesses are generally not protected by the corporation's attorney[-]client privilege and the attorney's subsequent conveyance of the witnesses' statements to the client does not cloak them with privilege. Therefore, the unredacted material should be produced to the plaintiff. [¶] I also find that the unredacted text is not protected as attorney work product. Although Ms. Hensley phrases her recitation of facts with words suggesting protection under the work product privilege (such as `it appears that ...' or `it is my impression that ...'), I find that the factual information was obtained by Ms. Hensley in her role as fact-finder rather than attorney, a role that could have been performed by a non-attorney. This factual information should be disclosed because it amounts to recorded statements of prospective witnesses and/or reflections on a non-legal matter. See generally Wellpoint Health Networks[, Inc.] v. Superior Court (1997) 59 Cal.App.4th 110, 68 Cal.Rptr.2d 844.[¶] For the foregoing reasons, I recommend that [Costco] be ordered to produce the unredacted text to the plaintiff and that the remainder be withheld from production."

b. Other proceedings.

In a January 9, 2007, conference, the parties and the trial court discussed the referee's recommendation. The trial court confirmed it had never found that Costco had waived attorney-client or work product privileges before submitting the Sheppard Mullin opinion letter for an in camera review.
In February 2007, Costco filed an ex parte application to file the redacted Sheppard Mullin letter under seal. In part, Costco requested the trial court issue a ruling on the referee's recommendation without reviewing the redacted letter in order to maintain the privileges Costco believed attached to the letter. On that date, the trial court issued an order granting Costco's application and indicating that it had not read the actual letter that was the subject of the request to produce based upon Costco's request that the ruling be issued "without reviewing the redacted letter in order to maintain the privilege Costco believes attaches to the letter[.]"

c. Trial court's ruling.

On March 6, 2007, the trial court issued the following order: "Based on [the referee's] findings and recommendations, and in light of [Costco's] request that the Court issue its ruling thereon without reviewing the final redacted Sheppard Mullin letter, the Court hereby grants in part and denies in part Plaintiffs' Motion To Compel Production of Documents and Testimony Re Exemption. [Costco] is hereby ordered to produce the unredacted text of the Sheppard Mullin letter to Plaintiffs in the final form recommended by [the referee]."
The trial court ordered production within 20 days, but also provided that the time period for production pursuant to said order shall be stayed upon the filing of an application for writ of mandate thereon, and during the appellate court's pending review.

5. The writ request and the order from the Supreme Court.

Costco filed in this court a petition for writ of mandate seeking a review of the trial court's disclosure order and an order directing the trial court to vacate it. We *353 issued an order to show cause, which we subsequently dismissed without an opinion as improvidently granted. We also denied the petition for writ of mandate.
Costco filed a petition for review in the Supreme Court requesting it direct us to issue a substantive ruling on Costco's writ petition, or alternatively, directing the Superior Court to vacate its order compelling disclosure of the August 4, 2000, letter. By order filed on August 15, 2007, the Supreme Court granted the petition for review and transferred the matter back to us with directions that we vacate our order denying the petition for writ of mandate and issue another order directing respondent Superior Court of Los Angeles to show cause why the relief sought should not be granted.
We issued an order to show cause, provided the parties with an opportunity to submit supplemental pleadings, and set the matter for hearing. In our order to show cause, we specifically asked the parties to address the issue of prejudice. We stated, in part, that any supplemental briefing "should include a discussion as to whether Costco would suffer irreparable harm from the release of the redacted document and thus, whether extraordinary relief by writ of mandate is required." In response to this inquiry, Costco stated that release of the redacted letter would result in immediate harm because it would reveal "outside counsel's impressions regarding characterizations of the facts that legal counsel chose to gather, as well as confidential client communication of those facts to counsel. [¶] ... [¶] Unless a writ vacating the disclosure orders is granted, Costco will suffer the irreparable injury that comes with disclosing confidential client-attorney communication of facts and the attorney's characterization of facts critical to the rendition of legal advice."
The parties attended a hearing before this court at which time the parties addressed the issues raised.
We hold that Costco has not met its burden to show that release of the redacted document will cause irreparable harm. Thus, we deny the requested relief.

III.

DISCUSSION
Costco asks this court for extraordinary relief by requesting that we issue a writ of mandate to protect the redacted document. Costco argues that the August 4, 2000, letter, as redacted, was protected by the attorney-client and work product privileges. Costco further contends that disclosure of the communication was improper because it did not explicitly or impliedly waive the privileges and the trial court erred in conducting an in camera review prior to making a waiver finding. We hold that Costco has not shown that extraordinary relief is warranted.

A. Attorney-client and work product privileges and in camera review.

"The [attorney-client] privilege authorizes a client to refuse to disclose, and to prevent others from disclosing, confidential communications between attorney and client. (Evid.Code, § 950 et seq.)" (Mitchell v. Superior Court (1984) 37 Cal.3d 591, 599, 208 Cal.Rptr. 886, 691 P.2d 642, fn. omitted.)[5] "`[Confidential *354 communication between client and lawyer' means information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship." (Evid. Code, § 952; see also, Zurich American Ins. Co. v. Superior Court (2007) 155 Cal. App.4th 1485, 1494-1496, 66 Cal.Rptr.3d 833; Wellpoint Health Networks, Inc. v. Superior Court, supra, 59 Cal.App.4th at p. 119, 68 Cal.Rptr.2d 844.) "[I]t does not protect disclosure of underlying facts which may be referenced within a qualifying communication. [Citation.]" (State Farm Fire & Casualty Co. v. Superior Court (1997) 54 Cal.App.4th 625, 639, 62 Cal.Rptr.2d 834.)
An attorney's work product is protected pursuant to Code of Civil Procedure section 2018.030, that confers "absolute" protection pursuant to subdivision (a) of that section and "qualified" protection for those items falling within subdivision (b). It reads: "(a) A writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories is not discoverable under any circumstances. [¶] (b) The work product of an attorney, other than a writing described in subdivision (a), is not discoverable unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing that party's claim or defense or will result in an injustice." (See, Wells Fargo Bank v. Superior Court (2000) 22 Cal.4th 201, 214, 91 Cal.Rptr.2d 716, 990 P.2d 591; State Farm Fire & Casualty Co. v. Superior Court, supra, 54 Cal.App.4th at pp. 649-650, 62 Cal.Rptr.2d 834.)
"Thus, the codified work product doctrine absolutely protects from discovery writings that contain' an `attorney's impressions, conclusions, opinions, or legal research or theories.' ([Code Civ. Proc.,] § 2018.030, subd. (a); see Wellpoint Health Networks, Inc. v. Superior Courts supra,] 59 Cal.App.4th 110, 120, 68 Cal. Rptr.2d 844.) The protection extends to an attorney's written notes about a witness's statements. [Citations.] `[A]ny such notes or recorded statements taken by ... counsel would be protected by the absolute work product privilege because they would reveal counsel's "impressions, conclusions, opinions, or legal research or theories" within the meaning of [the work product doctrine.]' [Citation.] When a witness's statement and the attorney's impressions are inextricably intertwined, the work product doctrine provides that absolute protection is afforded to all of the attorney's notes. [Citation.]" (Rico v. Mitsubishi Motors Corp. (2007) 42 Cal.4th 807, 814, 68 Cal.Rptr.3d 758, 171 P.3d 1092.)
*355 As stated in Evidence Code section 915, subdivision (a), the general rule is that when the trial court is determining whether a communication is privileged, the court may not require the disclosure of that communication, even if the disclosure is made in camera. (Southern Cal. Gas Co. v. Public Utilities Com. (1990) 50 Cal.3d 31, 45, fn. 19, 265 Cal.Rptr. 801, 784 P.2d 1373; Wellpoint Health Networks, Inc. v. Superior Court, supra, 59 Cal.App.4th at p. 121, 68 Cal.Rptr.2d 844.)[6]
However, under many circumstances courts are empowered to hold in camera hearings to determine whether a communication is privileged.
Subdivision (b) of Evidence Code section 915, provides statutory exceptions to this general rule when the communication sought to be disclosed is official information and the identity of an informer, trade secrets, or attorney work product. (See fn. 6; Wells Fargo Bank v. Superior Court, supra, 22 Cal.4th at p. 215, 91 Cal. Rptr.2d 716, 990 P.2d 591 [Evidence Code section 915 does not restrict a court's in camera review of documents claimed to be work product]; see e.g., Wellpoint Health Networks, Inc. v. Superior Court, supra, at p. 121, 68 Cal.Rptr.2d 844 [in camera proper procedure to evaluate claim of work product privilege].)
Further, with regard to the attorney-client privilege, case law has created other exceptions to Evidence Code section 915, subdivision (a) where reviewing the document may be instrumental to ascertaining if a privilege exists that forecloses release of the contents of a communication. Thus, the rule prohibiting courts from ordering the disclosure of the content of an attorney-client communication sought to be deemed privileged in order to rule on its admissibility, is "`not absolute' (Cornish v. Superior Court (1989) 209 Cal.App.3d 467, 480, 257 Cal.Rptr. 383), in the sense that a litigant may still have to reveal some information in camera to permit the court to evaluate the basis for the claim. (Cornish v. Superior Court, supra, at p. 480, 257 Cal.Rptr. 383; In re Lifschutz (1970) 2 Cal.3d 415, 437, fn. 23][,85 Cal.Rptr. 829, 467 P.2d 557].)" (Moeller v. Superior Court, (1997) 16 Cal.4th 1124, 1135, 69 Cal. Rptr.2d 317, 947 P.2d 279.)
For example, in rendering rulings based on claims of privilege, courts permit in camera disclosure to address whether waiver exists and when the application *356 of an exception depends upon the content of a communication. (In re Lifschutz, supra, 2 Cal.3d at p. 437, fn. 23, 85 Cal.Rptr. 829, 467 P.2d 557; Mavroudis v. Superior Court (1980) 102 Cal.App.3d 594, 606 & fn. 4, 162 Cal.Rptr. 724; e.g. OXY Resources California, LLC v. Superior Court (2004) 115 Cal.App.4th 874, 894, 9 Cal.Rptr.3d 621 [in camera proceeding necessary to determine waiver and because common interest qualified privilege depended upon nature and effect of the communications].)[7] An in camera proceeding is also proper where it is claimed that an attorney has been acting in some capacity other than as legal counsel and the dominant purpose of the communication and the attorney's work were not in furtherance of an attorney-client relationship. (E.g., 2,022 Ranch v. Superior Court (2003) 113 Cal.App.4th 1377, 7 Cal. Rptr.3d 197 [in camera hearing held in bad faith case where in-house claims adjuster, who was also an attorney, adjusted and investigated claims]; Lipton v. Superior Court (1996) 48 Cal.App.4th 1599, 1619, 56 Cal.Rptr.2d 341 [in camera procedure in bad faith case to examine documents containing insurance reserve and reinsurance information]; Aetna Casualty & Surety Co. v. Superior Court (1984) 153 Cal. App.3d 467, 475-76, 478-479, 200 Cal. Rptr. 471 [trial court should hold hearing to determine if attorney was acting in role other than providing legal advice and because some items may have been work product].)
In camera hearings are vital to the discovery process. Without such hearings, absolute control over the determination of whether a privilege exists would be based upon the unitary and potentially erroneous or disingenuous statements of the party asserting the privilege. Parties claiming privilege cannot be the sole arbiters of whether a communication is privileged. Rather, that is the responsibility of the court. By holding such hearings, trial courts fulfill their responsibility to ascertain "all of the facts on which the claim of privilege depends." (Lipton v. Superior Court, supra, at p. 1619, 56 Cal.Rptr.2d 341, fn. omitted.)
Trial courts can appoint discovery referees to conduct in camera review if holding such hearings is burdensome to the courts. (See Code Civ. Proc, § 639, subd. (a)(5); OXY Resources California, LLC v. Superior Court, supra, 115 Cal.App.4th at p. 897, 9 Cal.Rptr.3d 621.)
"We review the trial court's privilege determination under the substantial evidence standard." (Roman Catholic Archbishop of Los Angeles v. Superior Court (2005) 131 Cal.App.4th 417, 442, 32 Cal.Rptr.3d 209.) "`"When the facts, or reasonable inferences from the facts, shown in support of or in opposition to the claim of privilege are in conflict, the determination of whether the evidence supports one conclusion or the other is for the trial court, and a reviewing court may not disturb such finding if there is any substantial evidence to support it [citations]."' [Citations.] Accordingly, unless a claimed privilege appears as a matter of law from the undisputed facts, an appellate court may not overturn the trial court's decision to reject that claim. [Citation.]" (HLC Properties, Ltd. v. Superior Court (2005) 35 Cal.4th 54, 60, 24 Cal.Rptr.3d 199, 105 P.3d 560.)

*357 B. D.I. Chadbourne, Inc. v. Superior Court (1964) 60 Cal.2d 723, 36 Cal. Rptr. 468, 388 P.2d 700.
In redacting the August 4, 2000, letter, the referee concluded that parts of the communication were not privileged because they provided "factual information about various employees' job responsibilities ... based on non-privileged documents (Costco's written job descriptions) and interviews with two Costco Managers" and that under D.I. Chadbourne, Inc. v. Superior Court, supra, 60 Cal.2d 723, 36 Cal.Rptr. 468, 388 P.2d 700 (Chadbourne), the statements were not protected.
The attorney-client and work product privileges are available to corporate clients, as well as to natural persons. However, because corporations must speak through officers, employees, or other natural persons, the issue arises as to who can speak for the corporation and which communications in the corporate environment should be protected. (Evid.Code, § 175 [definition of "person" includes corporation]; Evid.Code, § 951 [defining "client" to mean persons who, directly or through an authorized representative, consult a lawyer]; Chadbourne, supra, 60 Cal.2d at p. 732, 36 Cal.Rptr. 468, 388 P.2d 700.)
Chadbourne "is the landmark California case on corporate attorney-client privilege." (Zurich American Ins. Co. v. Superior Court, supra, 155 Cal.App.4th at p. 1496, 66 Cal.Rptr.3d 833.) Chadbourne relied upon Upjohn Co. v. United States (1981) 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (Upjohn). Upjohn "recognized that in a corporate setting, the attorney-client privilege may extend to communications involving middle and lower level employees...." (Zurich American Insurance Co. v. Superior Court, supra, 155 Cal.App.4th at p. 1497, 66 Cal.Rptr.3d 833.) Additionally, Upjohn "acknowledged the importance of legal advice to corporate employees at all levels. ..." (Zurich American Insurance Co. v. Superior Court, supra, at p. 1498, 66 Cal.Rptr.3d 833.)
Chadbourne wished to provide the artificial entity with the same, but not greater, privileges as natural persons. (Chadbourne, supra, 60 Cal.2d at p. 736, 36 Cal.Rptr. 468, 388 P.2d 700.) Chadbourne recognized that not all statements furnished to corporate attorneys are privileged and also that privileges may be waived by corporations. (Id. at p. 735, 36 Cal.Rptr. 468, 388 P.2d 700.)
Chadbourne "identified 11 principles governing corporate attorney-client privilege in the context of an employee's statement regarding circumstances giving rise to litigation against the employer." (Zurich American Ins. Co. v. Superior Court, supra, 155 Cal.App.4th at p. 1497, 66 Cal.Rptr.3d 833.) These principles were designed to assist in analyzing when statements made by corporate employees are privileged. They address a variety of situations and relevant facts. These include whether the employee is the natural person to speak for the corporation, whether the report or statement is required in the ordinary course of the corporation's business, and whether the employer and employee intended the communication to be privileged. Another such principle involves inquiry into the dominant purpose of the communication. (Chadbourne, supra, 60 Cal.2d at pp. 736-738, 36 Cal.Rptr. 468, 388 P.2d 700.)
The Chadbourne principle factors were used by the trial court in redacting the August 4, 2000, letter.

C. Extraordinary relief is not warranted.

In this request for writ relief, Costco asserts that all of the statements *358 contained in the August 4, 2000, 22-page letter are protected and not subject to disclosure because the two managers were "corporate managers authorized by [Sheppard Mullin's] corporate client to speak [and] provide operational knowledge on which [attorney Hensley] could rely to provide legal advice." Costco suggests that extraordinary relief is required because the release of this privileged material will be harmful to it.
However, in requesting such relief, Costco has the burden to demonstrate not only that the letter is protected by the attorney-client privilege or work product doctrine, but also that extraordinary relief is warranted. "While parties are generally limited to appellate review of most interim orders, pretrial writ relief is available in certain limited circumstances...." (Smith v. Superior Court (1996) 41 Cal. App.4th 1014, 1020, 49 Cal.Rptr.2d 20, citing Omaha Indemnity Co. v. Superior Court (1989) 209 Cal.App.3d 1266, 1273-1274, 258 Cal.Rptr. 66.) Among the criteria we must consider before issuing the extraordinary relief requested is whether "the trial court's order is both clearly erroneous as a matter of law and substantially prejudices petitioner's case [citations]...." (Omaha Indemnity Co. v. Superior Court, supra, at pp. 1273-1274, 258 Cal.Rptr. 66; Roden v. AmerisourceBergen Corp. (2005) 130 Cal.App.4th 211, 218, 29 Cal.Rptr.3d 810; Schmier v. Supreme Court (2000) 78 Cal.App.4th 703, 707-708, 93 Cal.Rptr.2d 580 ["writ of mandate is granted `"only where necessary to protect a substantial right and only when it is shown that some substantial damage will be suffered by the petitioner if said writ is denied."' (Citations.")].)
It is often said that with reference to discovery orders directing the production of privileged matters, writ review is available because once privileged information is disclosed "`"there is no way to undo the harm which consists in the very disclosure." [Citation.]'" (People ex rel. Lockyer v. Superior Court (2004) 122 Cal. App.4th 1060, 1071, 19 Cal.Rptr.3d 324; OXY Resources California, LLC v. Superior Court, supra, 115 Cal.App.4th at pp. 886-887, 9 Cal.Rptr.3d 621.) Thus, "[extraordinary review of a discovery order will be granted when a ruling threatens immediate harm, such as loss of a privilege against disclosure, for which there is no other adequate remedy. [Citation.]" (Zurich American Ins. Co. v. Superior Court, supra, 155 Cal.App.4th at p. 1493, 66 Cal. Rptr.3d 833.)
We have examined the redacted letter, which is presented to us under seal. As redacted, it demonstrates that Costco was successful in precluding discovery of a majority of the August 4, 2000, letter. Thirteen of the 22 pages (pages 2-9 and 17-21) were redacted in their entirety. Large portions of the remaining pages were eliminated by the referee. The only parts remaining visible are inconsequential and do not infringe on the attorney-client relationship. They came from non-privileged written job descriptions and interviews with the two managers.
As redacted, the letter shows the name, address and telephone number of the sender and the recipient of the letter. Costco does not object to the disclosure of this information.[8] As redacted, the letter also reveals headings labeling the different positions discussed therein, such as "hearing *359 center manager." Costco does not object to the disclosure of these headings. The other statements in the letter that remain visible are job descriptions of 13 department managers, as well as job descriptions for the one hour photo operator, the meat manager, the deli manager and the bakery manager. These factual statements about the employee's responsibilities do not communicate any legal opinion or analysis from outside counsel Sheppard Mullin to Costco's corporate counsel. The letter as redacted does not reveal attorney Hensley's mental processes or impressions. It does not reveal strategy. Rather, the factual information contained in the letter as redacted merely describes the work performed by the various managerial or quasimanagerial employees, information that is readily available from a number of sources, such as Costco's written job descriptions and from numerous rank and file Costco employees. For example, the letter reveals that Costco's hearing center manager fits customers for hearing aids and Costco's photo operator processes and prints films. This information is hardly startling and can easily be obtained from interviews, depositions, or from a production request. Further, contrary to Costco's suggestion, these and other statements in the letter do not reveal attorney Hensley's legal knowledge, advice, or impressions of the facts. The only parts that the referee left visible in the letter simply reveal factual statements about the tasks performed by the various managers. Exposing the letter as redacted does not infringe upon Costco's attorney-client relationship with its counsel.
We agree with Costco that a party may be harmed when only portions of a letter are revealed. We also agree with Costco that in order to render advice, attorneys need to gather the appropriate facts on which legal advice can be rendered. However, to obtain extraordinary relief, Costco has to demonstrate not only that the letter is protected from disclosure, but also that Costco will be harmed by the disclosure of those portions of the August 4, 2000, letter that remain visible and have not been redacted. Costco cannot meet this burden because the unredacted portions of the Sheppard Mullin letter contain no information that can irreparably harm Costco.[9]

IV.

DISPOSITION
The writ of mandate is denied. Costco is to bear all costs.
We concur: KLEIN, P.J., and CROSKEY, J.
NOTES
[1] Real parties in interest are Greg Randall, Cynthia Peterson, Terry Head, Susan McManus, Brenda Chan, Alan Rogers, Trudy Engstrom, and Louis Godoy.
[2] Although the work product doctrine is not contained in the Evidence Code as a "privilege," it is often discussed as a "privilege."
[3] The role of the "realistic expectation" of the employer is discussed in Ramirez v. Yosemite Water Co. (1999) 20 Cal.4th 785, 85 Cal. Rptr.2d 844, 978 P.2d 2, as follows: "if hours worked on sales were determined through an employers job description, then the employer could make an employee exempt from overtime laws solely by fashioning an idealized job description that had little basis in reality. On the other hand, an employee who is supposed to be engaged in sales activities during most of his working hours and falls below the 50 percent mark due to his own substandard performance should not thereby be able to evade a valid exemption. A trial court, in determining whether the employee is an outside salesperson, must steer clear of these two pitfalls by inquiring into the realistic requirements of the job. In so doing, the court should consider, first and foremost, how the employee actually spends his or her time. But the trial court should also consider whether the employees practice diverges from the employers realistic expectations, whether there was any concrete expression of employer displeasure over an employees substandard performance, and whether these expressions were themselves realistic given the actual overall requirements of the job." (Id. at p. 802, 85 Cal.Rptr.2d 844, 978 P.2d 2, final italics added; accord Sav-On Drug Stores, Inc. v. Superior Court (2004) 34 Cal.4th 319, 336-337, 17 Cal.Rptr.3d 906, 96 P.3d 194.)

Because the "assertion of an exemption from the overtime laws is considered to be an affirmative defense, ... the employer bears the burden of proving the employees exemption. [Citations.]" (Ramirez v. Yosemite Water Co., supra, 20 Cal.4th at pp. 794-795, 85 Cal. Rptr.2d 844, 978 P.2d 2.)
[4] Plaintiffs focused on the attorney-client privilege, suggesting that the work product privilege did not apply because the requested documents were not prepared in anticipation of litigation. However, plaintiffs suggested that if the work product privilege was applicable, it was also waived.
[5] The attorney-client privilege is set forth in Evidence Code section 954 which reads: "Subject to Section 912 and except as otherwise provided in this article, the client, whether or not a party, has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer if the privilege is claimed by: [¶] (a) The holder of the privilege; [¶] (b) A person who is authorized to claim the privilege by the holder of the privilege; or [¶] (c) The person who was the lawyer at the time of the confidential communication, but such person may not claim the privilege if there is no holder of the privilege in existence or if he is otherwise instructed by a person authorized to permit disclosure. [¶] The relationship of attorney and client shall exist between a law corporation as defined in Article 10 (commencing with Section 6160) of Chapter 4 of Division 3 of the Business and Professions Code and the persons to whom it renders professional services, as well as between such persons and members of the State Bar employed by such corporation to render services to such persons. The word `persons' as used in this subdivision includes partnerships, corporations, limited liability companies, associations and other groups and entities."
[6] Evidence Code section 915 reads:

"(a) Subject to subdivision (b), the presiding officer may not require disclosure of information claimed to be privileged under this division or attorney work product under subdivision (a) of Section 2018.030 of the Code of Civil Procedure in order to rule on the claim of privilege; provided, however, that in any hearing conducted pursuant to subdivision (c) of Section 1524 of the Penal Code in which a claim of privilege is made and the court determines that there is no other feasible means to rule on the validity of the claim other than to require disclosure, the court shall proceed in accordance with subdivision (b).
"(b) When a court is ruling on a claim of privilege under Article 9 (commencing with Section 1040) of Chapter 4 (official information and identity of informer) or under Section 1060 (trade secret) or under subdivision (b) of Section 2018.030 of the Code of Civil Procedure (attorney work product) and is unable to do so without requiring disclosure of the information claimed to be privileged, the court may require the person from whom disclosure is sought or the person authorized to claim the privilege, or both, to disclose the information in chambers out of the presence and hearing of all persons except the person authorized to claim the privilege and any other persons as the person authorized to claim the privilege is willing to have present. If the judge determines that the information is privileged, neither the judge nor any other person may ever disclose, without the consent of a person authorized to permit disclosure, what was disclosed in the course of the proceedings in chambers."
[7] Parties may waive both work product and attorney-client privilege. (Wells Fargo Bank v. Superior Court, supra, 22 Cal.4th at p. 214, 91 Cal.Rptr.2d 716, 990 P.2d 591; OXY Resources California, LLC v. Superior Court, supra, 115 Cal.App.4th at p. 891, 9 Cal.Rptr.3d 621.)
[8] The attorney-client privilege does not protect independent facts related to the communication such as "that a communication took place, and the time, date and participants in the communication. [Citation.]" (State Farm Fire & Casualty Co., supra, 54 Cal.App.4th at p. 640, 62 Cal.Rptr.2d 834.)
[9] In light of our holding that extraordinary relief is not warranted, we need not address whether Costco explicitly or impliedly waived the attorney-client privilege and the work product doctrine.